Setrak K. BOYAJIAN, etc., Defendant-
Appellant,

v.

OLD COLONY ENVELOPE COMPANY,
Inc., et al., Plaintiffs-Appellees.

No. 5598.

United States Court of Appeals
First Circuit.

June 14, 1960.

Setrak K. Boyajian, pro se.

Eben M. Graves, New York City, with
whom Donald R. Grant, Boston, Mass.,
Richard G. Fuller, Jr., New York City,
Ropes, Gray, Best, Coolidge & Rugg,
Boston, Mass., and Brumbaugh, Free,
Graves & Donohue, New York City, on
brief, for appellees.

Before WOODBURY, Chief Judge,
and HARTIGAN and ALDRICH, Cir-
cuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a decree of the
United States District Court for the Dis-
trict of Massachusetts, entered Septem-
ber 16, 1959 upon plaintiffs-appellees'
motion for summary judgment, which
adjudged invalid all claims under U.S.
Patent No. 2,804,395 of the defendant-
appellant and dismissed his counterclaim
for infringement.

Plaintiffs petitioned the district court
under 28 U.S.C. §§ 2201, 2202 (1958) for
a declaratory judgment against defend-
ant, the owner of patent No. 2,804,395
that all the claims of said letters patent
were invalid and not infringed. Defend-

ant answered and counterclaimed for damages for infringement and other relief.

The patent in suit, issued to defendant on August 27, 1957 on application filed September 4, 1953, relates to "Envelopes And The Like With Remoistenable Adhesive Comprising Polyvinyl Alcohol."[1]

In its opinion the district court stated: "The only possible basis for contending that Claim 4 shows an advance over the prior art is to rely upon the boiling of the polyvinyl alcohol, and the connected process of keeping the boiling mixture under agitation." It assumed for purposes of disposition of the motion, that such boiling and agitation produced a more satisfactory result. However, it concluded as a matter of ultimate fact and of law that such an improvement would not support a patent since it would have been obvious to one skilled in the art, and was pointed out by DuPont as a workable variation from the practice it recommended in regard to its brand of polyvinyl alcohol.[2] The district court

1. The patent contains ten claims. For our purposes they can be classified in three groups. The first is Claim 1 which reads as follows:

"1. An envelope having on the underside of the marginal portions of the seal flap thereof a glossy layer of remoistenable adhesive coating composition having as its essential ingredient polyvinyl alcohol, said layer being non-curling, non-blocking, non-staining, non-checking, and permanently responsive to applied moisture at any temperature, and having a wholesome, pleasant taste, and quick adherence upon remoistening and which has been deposited from homogeneous free flowing solution." Claim 4 which is typical of the second group reads:

"4. An envelope having on the underside of the marginal portions of the seal flap thereof a glossy layer of remoistenable adhesive coating composition having as its essential ingredient polyvinyl alcohol which has been boiled in aqueous solution by dissolving in hot water in a suitable jacketed kettle having a mixer and bringing the temperature to boiling and keeping it there under agitation for approximately one hour or until all the lumps have disappeared and a near-clear, homogeneous solution has been formed, with all volatile contaminants distilled off therefrom." Claim 5, typical of the third group, reads:

"5. An envelope as claimed in claim 4 wherein cane sugar has been added to the hot aqueous solution of polyvinyl alcohol at the conclusion of said boiling." There are additional claims which cover postage stamps, labels, gummed tape or paper with remoistenable adhesive as claimed in Claims 4 and 5.

2. Among the documentary material before the district court on the motion for summary judgment relating to the prior art was patent No. 2,348,220 issued to Kline in 1944 which relates generally to adhesive paper, and "more particularly to an adhesive coated web or tape adapted for use with telegraph printers." The adhesive film as taught by Kline was comprised of water-soluble polyvinyl alcohol. It specified a low concentration of polyvinyl alcohol in the aqueous solution, but stated the concentration may vary from 2 to 20 percent. It taught that the mixture of polyvinyl alcohol powder and water might be heated slightly to facilitate solution. The patent also stated: "For purposes of illustration, the invention has been described with reference to an adhesive film or layer on a telegraph tape or web, but it will be understood that various advantages of the adhesive film disclosed may be utilized in connection with tapes or webs which may be thus gummed over their entire areas or restricted areas thereof for various purposes, such as for wrapping and sealing, envelope flaps, labels, postage stamps, and others, * * *." Also before the district court was a brochure of DuPont setting forth the properties, various use characteristics and other relevant material with regard to its brand of polyvinyl alcohol, "Elvanol." Most pertinent to our consideration are the sections of the brochure which disclose: 1. Advantages in dissolving the various grades of polyvinyl alcohol resulting from heating the water or the mixture to 90°C. 2. That water solutions of "Elvanol" could be "heated at 100°C (212°F) for several days without any apparent change except for a drop in pH in the case of partially hydrolized grades." The brochure also suggested the use of two grades of "Elvanol" as a remoistenable adhesive; an illustration shows an envelope in the industry group "Adhesives and Binders". This brochure was not referred to in the file wrapper of Boyajian's patent.

said that "this conclusion of invalidity could not be overcome even if defendant could prove every fact set forth in his affidavits and the other material submitted by him."

We disagree. Before it is possible to say that the employment of boiling was obvious to obtain the improved polyvinyl alcohol solution, it is necessary to know what the problem was which needed to be overcome.

The patent and its file wrapper state that defendant met a problem in seeking to utilize polyvinyl alcohol as the essential ingredient of an envelope sealing gum which was there characterized as "lack of operating stability as well as uniformity" of the polyvinyl alcohol solution. The file wrapper specifies the problem as the formation of clusters or lumps by particles of polyvinyl alcohol in the aqueous solution concentrations suitable for use as an envelope sealing gum. Defendant also stated in his deposition what the problem encountered was: "particles [of polyvinyl alcohol] remain aloof." The defendant attributes this characteristic both to the structure of polyvinyl alcohol itself and to the possible presence of contaminants.

Boiling may be an obvious method to get rid of certain volatile contaminants, once the presence of such is known or even to precipitate out substances with decreased solubility at higher temperatures. However, the use of boiling and agitation to obtain a uniform or homogeneous distribution of polyvinyl alcohol in the solution cannot be said to be obvious from the nature of boiling, and unless it had been suggested previously to overcome this problem of lack of homogeneity it would properly support the validity of a patent.

■ The DuPont brochure stated: " 'Elvanol' solution, properly prepared, is a clear, colorless liquid, free from lumps." DuPont suggested the heating of a mixture of polyvinyl alcohol dispersed in cold water as a means of avoiding "lumps". If the problem that defendant's patent and file wrapper attest to is nothing more than the "lumps" that the DuPont suggestion obviated, then the further heating of the mixture to the boiling point might be said to be an obvious variation.[3]

However, part of the language setting out the problem met by Boyajian seems to go beyond the problem of breaking or avoiding lumps. For instance, he states that his process of boiling "shortens the chain lengths" of the polyvinyl alcohol. The file wrapper states: "[T]he percentage of water will vary in different regions within the same container, and agitation will only wetblend such variations without eliminating them. Nor heating 'slightly' will materially (sic) change this situation, and so both the segregation and the lumps will persist indefinitely, perhaps diminishing by age but never disappearing."

Elsewhere in his deposition defendant said:

"Q. [T]he film is smoother. Does that refer to the property you spoke about the other day, that sometimes the solution appears clear if it isn't boiled, but if you put it on a film and run your finger over it, you can feel a roughness? A. A grit, yes.

\*　\*　\*　\*　\*　\*

"A. \* \* \* Well not just grit, but of course it lacks homogeneity, you might say.

\*　\*　\*　\*　\*　\*

3. The district court in concluding that boiling was obvious to one skilled in the art apparently relied at least in part on the disclosure in the DuPont brochure that "Elvanol" solutions had been boiled without apparent harmful effects. The disclosure that a particular treatment had been made to the solutions, without spelling out the purpose of the treatment, or the effect in regard to an important characteristic for a particular use, i. e. envelope seal, does not seem to us to invalidate any invention by one who uses the treatment to achieve the result of overcoming a particular problem, if the use of that treatment is not obvious for overcoming that problem. See Application of Krodel, 1955, 223 F.2d 285, 42 CCPA 993.

"A. * * * unboiled polyvinyl alcohol will have particles, compared with boiled solution. * * * Heavier particles floating in dilute solution. When it is applied it does not dry so fast as a homogeneous solution would."

██ The problem of "lumps" that is mentioned in the DuPont brochure is not further specified. The various statements of defendant as referred to above tend to show that the problem encountered was not merely one of breaking up detectible "lumps", although such does seem to be part of the problem. If the problem met by defendant differed from that treated by DuPont then we do not believe it can be said that boiling was an obvious treatment as indicated by the prior art. If, as seems here, the identity or nonidentity of the problems is not clear from the affidavits and other material before the district court, we do not believe that the validity of a patent may be rejected on a motion for summary judgment.[4] See Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016; American Optical Co. v. New Jersey Optical Co., D.C.D.Mass.1944, 58 F.Supp. 601.

Affidavits submitted by the defendant that there was no use of polyvinyl alcohol as a sealing gum for envelopes prior to the introduction of defendant's product in 1953 would seem to be circumstantial support for a conclusion that there was an additional obstacle to the use of polyvinyl alcohol as an envelope sealing gum beyond the mere breaking down of lumps in the aqueous solution and that defendant was using boiling to meet this obstacle.[5]

The district court concluded that Claim 1 was invalid "because it does no more than use a series of laudatory adjectives." [176 F.Supp. 629.] It stated that: "The claim does not describe the structure or composition of Boyajian's adhesive composition. It does not even refer to boiling the solution" and held that the standards of 35 U.S.C. § 112 (1958) were not met. A portion of the file wrapper in the record before us indicates that defendant answered such an objection in two ways: (1) that boiling was implied; (2) that as he was the first to use polyvinyl alcohol in any form he was entitled to a broad claim reciting its use for that purpose in any form even if boiling was a necessary step. The record on appeal does not contain enough to indicate the Patent Office's basis in allowing this claim. However, if the patent was issued on the basis of boiling being implied, then there is no harm to defendant since other claims cover the invention, which is a method of obtaining such an adhesive and its application to envelope seals. If the claim was allowed on its own wording we agree with the district court that the descriptive language is functional and does not satisfy Section 112.

██ We also agree with the district court that the record does not indicate that sugar was used by defendant to achieve any result that differed from its utilization in the prior art. The claims reciting the use of sugar as an addition to the polyvinyl alcohol solution are invalid for obviousness.

██ We do not decide the validity of the defendant's claims involving the boiling and agitation of the polyvinyl alcohol solution. Our decision is merely that on

4. A patent once issued is presumed valid. 35 U.S.C. § 282 (1958). However, failure of a file wrapper to cite the prior art weakens this presumption. H. Schindler & Co. v. C. Saladino & Sons, 1 Cir., 1936, 81 F.2d 649; Robinson Aviation, Inc. v. Barry Corp., D.C.D. Mass.1952, 106 F.Supp. 514. The DuPont brochure was not cited. However, the question of whether this brochure disclosed information on technique or characteristics that make boiling obvious to solve the problem met by defendant would still remain.

5. Defendant's patent, as well as the deposition of one of plaintiffs' experts, shows that there was patented and in use a remoistenable adhesive employing polyvinyl alcohol in combination with sulphite waste and other materials. The patent and the deposition do not, however, establish that this adhesive was used, or could be used, on envelopes as a sealing gum.

the record before the district court, it was error to grant summary judgment invalidating such claims. It is possible that upon trial after viewing all the evidence a conclusion of invalidity will be reached. However, at this stage of the litigation and on the record we do not believe that the statutory presumption of validity has been overcome. See Long v. Arkansas Foundry Company, 8 Cir., 1957, 247 F.2d 366.

Judgment will be entered vacating the judgment of the district court and remanding the case for further proceedings not inconsistent with this opinion.