Donald R. Grant, Ropes & Gray, Boston, Mass., for plaintiff.

S. K. Boyajian, pro se.

**OLD COLONY ENVELOPE COMPANY, Inc., Stein, Hall & Company, Inc.**

v.

**Setrak K. BOYAJIAN, individually and doing business as Precision Testing Laboratories.**

**Civ. A. 57-1246-W.**

United States District Court
D. Massachusetts.

Feb. 5, 1963.

Supplemental Opinion Feb. 13, 1963.

WYZANSKI, District Judge.

Plaintiffs, Old Colony Envelope Company, Inc. and Stein, Hall & Company, Inc. have moved for summary judgment that the former does not directly infringe claims 1, 2, 3, and 4 of Boyajian's Patent No. 2,804,395, and the latter does not contributorily infringe claims 1, 2, 3, 4, 6, 7, 8, and 9 of the same patent.

It is unnecessary for this Court to set forth the claims of this patent or its alleged advance on the prior art, or its alleged utility, as the Court of Appeals in an earlier stage of this case has done so. Boyajian v. Old Colony Envelope Co., 1st Cir., 279 F.2d 572.

Claims 2, 3, 4, 6, 7, 8, and 9 each expressly contains a boiling limitation, that is each claim specifically states that it includes as an "essential ingredient polyvinyl alcohol which has been boiled in aqueous solution." Claim 1 impliedly has the same limitation, according to the opinion of the Court of Appeal, 279 F.2d 572, 575.

When this case was last here this Court stated that "the only possible basis for contending that claim 4 shows an advance over the prior art is to rely upon the boiling of polyvinyl alcohol" D.C., 176 F.Supp. 627, 629. And the same is true of the other claims now involved. More-

over, the importance of the boiling limitation was recognized by the Court of Appeals in its suggestion that at a plenary trial the evidence might lead to "a conclusion that there was an additional obstacle to the use of polyvinyl alcohol as an envelope sealing gum beyond the mere breaking down of lumps in the aqueous solution and that defendant was using boiling to meet this obstacle." 279 F.2d at 575.

Moreover, both the Court of Appeals and this Court have referred to a possible anticipation of defendant's invention by the 1947 DuPont Elvanol brochure. That brochure discloses the method of making homogeneous, lump-free solutions of polyvinyl alcohol by *heating* them, under agitation, to 194° in steam-jacketed kettles. Hence Boyajian's application for a patent, which was not filed until 1953, 7 years after the DuPont brochure, necessarily relies upon something more than heating. It, of necessity, must be premised, as claims 2, 3, 4, 6, 7, 8, and 9 expressly state, upon a step in which polyvinyl alcohol is *"boiled."*

■ The word "boiled", despite the contrary argument of defendant, as used in a patent claim with respect to an aqueous solution, is not a lay term of flexible meaning. As a matter of law, it has a precise scientific definition intended to inform the public of the teaching of the patent. To boil is to bubble up in agitation through the action of heat causing the lowest portions of the liquid to pass into the gaseous form and escape. Thus, for example, at standard atmospheric pressure water boils at 212°F.

The uncontradicted evidence, submitted on this motion, is that aqueous solutions of the polyvinyl alcohol used by Stein, Hall boil at just about the same temperature as water, that is, at 212°F. (See deposition of Dr. Daniel P. Norman, the late director of research of New England Laboratories, Inc.)

Depositions, taken March 19, 1959 of John Mahlman and William H. E. Neuss, lend themselves only to an interpretation that Stein, Hall produces its product without boiling, that is, without reaching a temperature of 212°F. The cross-examination by defendant (including his frequent remarks calling attention of the deponents to particular observations), makes it abundantly clear that, if boiling be defined scientifically, as it has been in this opinion, the only possible inference is that in the Stein, Hall process the polyvinyl alcohol is NOT boiled, for it never reached a temperature of 212°F, and no artificial device was used to minimize the temperature readings.

An affidavit by Mahlman filed as recently as November 1, 1962 reaffirms that "no polyvinyl alcohol ingredient of any SUPERSEAL adhesive [the accused product] ever sold by Stein, Hall to Old Colony was ever boiled." No affidavit or deposition recites any contrary observation.

■ Thus plaintiffs have laid a complete foundation for their motion. Their affidavits and depositions show that they do not infringe the Boyajian patent as construed by the Court of Appeals and by this Court.

In resisting plaintiffs' motion for summary judgment, defendant proceeds on the quite erroneous assumption that there are genuine issues of material fact as to (1) the meaning of "boiled" as used in the patent, (2) the fact that aqueous solutions of polyvinyl alcohol boil at 212°, and (3) the fact that Stein, Hall's accused products are heated to a temperature deliberately kept several degrees lower than 212°, generally near 190°. Boyajian has no standing to offer a mere affidavit of fact in conflict with the first of those three propositions, and, despite constantly renewed opportunities offered by this Court over several years, he has not offered any affidavit of observed facts, contradicting plaintiffs' affirmative affidavits of any of the three propositions. His so-called affidavits are nothing but sworn arguments. They fail to set forth any admissible evidence except to repeat the depositions which, as already stated, can only be read as showing that plaintiffs do not boil their product.

■ Even though the depositions and affidavits reveal that there is "no genuine issue as to any material fact" (F.R. Civ.Proc. Rule 56(c)) defendant argues that plaintiffs should be required to offer their evidence at a plenary trial and that defendant should be allowed to argue his case thereafter. In essence defendant is contesting the validity of the summary judgment technique even in the clearest of cases. His contention flies in the face of F.R.Civ.Proc. Rule 56 as interpreted in Brisk Waterproofing Co., Inc. v. A. Belanger & Sons, Inc., 1st Cir., 209 F.2d 169.

Motion for summary judgment granted.

### Supplemental Opinion

In response to defendant's motion this Court has again studied his affidavit of July 20, 1960.

That affidavit states that during the deposition "the jacket temperature" "went up to 200 F. at least twice." That statement carries the negative pregnant that affiant did not observe the temperature rise to a higher degree.

The affiant's statement that "the rotation of the * * * double action blades, in and above the 'solution' created a partial vacuum so as to reduce the pressure above the surface of the solution and thereby bring about boiling by ebullition at 190°F" is a mere argument, and on its face not a statement of observed fact. There is no testimony from the affiant or from anyone else as to what was the pressure above the solution, or whether at that pressure there is any evidence that the solution would boil at 190°F.

As this Court's memorandum of February 5, 1963 holds, the verb "boil" is a word of art having a precise scientific meaning. At all times this Court has been willing to receive any affidavit or like offer of proof which would show that (with due regard to the meaning of "boiling") any witness is prepared to testify that he observed the Stein, Hall aqueous solutions of polyvinyl alcohol boiling. Thus, a person might give his affidavit that from experiments conducted by him he has learned that at a certain pressure such a solution will at a certain temperature "bubble up in agitation through the action of heat causing the lowest portions of the liquid to pass into the gaseous form and escape"; and that such person (or some other affiant) observed that on a certain occasion the stated pressure existed and the solution had the stated temperature. Alternatively a person might give his affidavit that he himself observed (or the opposing party admitted) that "the *lowest* portions of the liquid passed into gaseous form." But merely to observe "steaming", even a "vat * * * steaming quite violently" does not show that the *lowest* portions of the liquid are passing into gaseous form. It is indeed common experience that water steams violently before it reaches 212°F, its boiling point.

Mindful that defendant suffers, at his own will, the handicap of presenting this case without the aid of legal counsel or scientific experts, this Court, as this memorandum indicates, has sought fully and courteously to respond to contentions that might not otherwise merit answer. The docket entries in this case prove that again and again defendant has been given prolonged extensions of time, lengthy hearings, and opportunity to show that he has a genuine issue of fact. The Court cannot help feeling that it is because he has not professional assistance that defendant finds it difficult to see that unless he shows that he has admissible *factual* evidence on which a trier of fact could be allowed to make a finding in his favor, he is not entitled to put the opposing parties to the expense, inconvenience, and delay of a plenary trial.

This memorandum shall be regarded as an amendment to the Court's memorandum of February 5, 1963, and the Clerk is therefore authorized to enter upon the docket

Defendant's motion of February 13, 1963 granted to the extent indicated in the Court's memorandum of February 13, 1963.