**COLOURPICTURE PUBLISHERS, INC., Plaintiff, Appellant,**

v.

**MIKE ROBERTS COLOR PRODUCTIONS, INC., Defendant, Appellee.**

**No. 7025.**

United States Court of Appeals First Circuit.

May 8, 1968.

David Wolf, Boston, Mass., with whom George L. Greenfield and Wolf, Greenfield & Hieken, Boston, Mass., were on brief, for appellant.

Melvin R. Jenney, Boston, Mass., with whom Edward B. Gregg, Paul L. May, William G. MacKay, Gregg & Stidham, San Francisco, Cal., and Kenway, Jenney & Hildreth, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellant, Colourpicture Publishers, Inc. (Colourpicture) sued appellee Mike Roberts Color Productions, Inc. (Roberts) for infringing its patented device of displaying a strip of connected but separable postcards hanging in a vertical row, from a hook with room for advertising at the top. After various affidavits and exhibits were filed, both parties moved for summary judgment. The district court, without hearing argument, granted Roberts' motion, adjudged the patent invalid, but held that if it were valid, Roberts' product infringed. Only the former ruling is at issue on this appeal. Despite the provokingly irresistible simplicity of the facts, we reverse.

Apparently from immemorable time, postcards have been sold individually or in album packets with pictures on both sides or one side, individually attached to the binder, loosely lying within, or folded together in accordion fashion. The latter mode—an album of a folded perforated postcard strip—was patented in England by one Haddan in 1904. Only in 1965 did one Tichnor, Colourpicture's assignor, file an application for a patent, received in 1966, on the idea of linking easily separable postcards in one un-

folded sheet carrying an advertising panel at one end with a hole for hanging.

The advantages claimed over the prior art can be summarized as follows: for the producers, low cost manufacture; for the retailers, economic and effective display and servicing[1]; for the consumers, instant appraisal. While this alleged advance over the prior art may have fallen short in the public mind of a successful heart transplant, its effect in the market appears from the affidavits as impressive.[2] Colourpicture offered affidavits from 37 distributors of postcards, who had been in the business from one to 25 years. They acknowledged the novelty, utility and unobviousness of the Scenicard, stating that "none of the previous devices in the postcard field * * * suggest, imply, lead to, or perform the functions of the Scenicard."

Roberts, in supporting its motion for summary judgment, relied on the Tichnor file wrapper, the Haddan patent, and examples of albums of postcards either folded together or separately secured to a binder. The gist of the file wrapper proceedings is that the examiner refused a patent until Tichnor amended his claims to specify that the single sheet of cards would be "arranged substantially in a single plane" and that "substantially all of the graphic illustrations [would be] presented to the eye in their correct viewing positions. * * * " Roberts' own product, "Six-Pix", varied from Scenicard only in that two of the string of postcards are correctly viewed by turning the strip from a vertical to a horizontal position.

The district court ruled that the Tichnor patent was "invalid under the provisions of 35 U.S.C.A. § 103 for lack of invention over the prior art. Graham v. John Deere Co., 383 U.S. 1, [86 S.Ct. 684, 15 L.Ed.2d 545] (1966)." 272 F. Supp. 280, 281 (D.C.Mass.1967). It supported this conclusion by stating that there was "no invention" in using a hole to hang a piece of paper on a wall, nor any invention in having space for advertising material on a strip (citing tide tables, fire alarm listings, athletic schedules), nor any need for expert testimony to compare the various exhibits and determine "the lack of invention, within the meaning of 35 U.S.C.A. § 103 * * *." Id. Finally, the court commented on the action of the Patent Office Examiner in first rejecting all of Tichnor's claims, then accepting a "very minor 'amendment' " to two claims and reversing his position without indicating how the prior defect of "lack of invention" had been corrected. Id.[3]

■ While the district court repeatedly used the old "invention" language of Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248 (1851), it is clear by its references both to *Graham*, supra, and to section 103 that it found the Tichnor patent invalid for obviousness. This observation is important because counsel for Roberts directed almost all of their argument to the proposition that the Tichnor contribution was "trivial", and not "patentable", which words we construe in context as not "novel". While we are not limited to the ground relied upon by the district court if it is clear that the judgment should be affirmed for

1. While not covered by either the claims or specifications, other advantages appeared when the Scenicard went on the market: reduction in soiling, manhandling, misplacing in racks, and pilferage.

2. The Scenicard zoomed Colourpicture's sales from a prior high level of $200,000 of card sales to $900,000 in the first full year in which the new product was offered. In a year and a half Colourpicture had sold the equivalent of one new card to one out of eight Americans. And all for $5,000 in advertising.

3. Section 103 reads as follows:
   "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

other reasons, see Walmac Co. v. Isaacs, 220 F.2d 108 (1st Cir., 1955), we are not willing to hold as a matter of law on the record before us that the patent was invalid under section 101 or 102. We take the district court's finding as we think it clearly appears—that this idea was "obvious"—and judge it on that basis.[4]

■ Having in mind the criteria set forth in *Graham*, supra, we are of the opinion that the district court did not address the required questions prerequisite to a finding of obviousness. The Court in *Graham* made a point of saying that the issue of non-obviousness " * * * lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." 383 U.S. at 17, 86 S.Ct. at 694.

Wholly apart from the possible contribution to these inquiries which testimony might have made, it is apparent that the court's conclusory comments as to "lack of invention" fell short of that "strict observance" of *Graham's* emphasis on an inquiry "beamed with greater intensity on the requirements of § 103." 383 U.S. at 18, 19, 86 S.Ct. at 694. Nor do we have any inquiry into the existence of a long-felt need, the extent of efforts directed at this need, the relevance of Colourpicture's commercial success, the acceptance of the device by customers— the sub-tests which, while secondary, might have relevance. Graham v. John Deere Co., supra at 17–18, 86 S.Ct. 684; Note, Sub-Tests of "Non-obviousness", 112 U.Pa.L.Rev. 1169 (1964).

■ All that we say is that it is not impossible that Colourpicture, if allowed to proffer postcard manufacturers and distributors as witnesses, might establish that the simple ideas in the Tichnor patent were not obvious to practitioners in that occupation. It might also be relevant, in determining obviousness, to see whether and, if so, how the problem met by Tichnor's patent had been treated by others. Boyajian v. Old Colony Envelope Co., 279 F.2d 572 (1st Cir. 1960); cf. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 66–67, 43 S.Ct. 322, 67 L.Ed. 523 (1922), and 35 Geo.Wash.L.Rev. 720, 724 (1967).

As has been well said some time ago, "[c]ourts, made up of laymen as they must be, are likely either to underrate or overrate, the difficulties in making new and profitable discoveries in fields with which they cannot be familiar * * *." Safety Car Heating Co. v. Gen. Elec. Co., 155 F.2d 937, 939 (2d Cir. 1946). A layman can be beguiled into finding a device "obvious" just because it appears so simple when viewed after the deed has been done.

■■ It is wholly natural that, after the fact, we should analogize the hanging postcard strip to a fire alarm schedule or calendar or, for that matter, a Gobelin tapestry. But the more remote such prior art is from the context of the subject matter, the less persuasive it becomes on the question of obviousness. There is rarely anything really new under the sun. At some point the bringing together of knowledge or technique practiced in other fields becomes invention. Ling-Temco-Vought, Inc. v.

4. Appellee submits that an additional ground for affirmance, even though not dealt with by the district court, is the failure of the Tichnor claims, under 35 U.S.C. § 112, to point out the invention with sufficient particularity. The language appellee criticizes as too "elastic and indefinite" is the amendment to the claims specifying that "substantially all of the graphic illustrations" be presented in their correct viewing positions. While "substantially" might be deemed fatally imprecise in connection with highly sophisticated processes or machinery, as in the cases relied on by appellee, we do not feel compelled so to rule here. See Arnold Pipe Rentals Co. v. Eng'r Enterprises, Inc., 350 F.2d 885, 892–893 (5th Cir. 1965).

Kollsman Instr. Corp., 372 F.2d 263, 268 n. 1 (2d Cir. 1967).

This does not mean, as Roberts argues with surface plausibility, that if this case is not appropriate for summary judgment, no patent case is. For this case, at least as it is presented to us, is not one where, as in Converse & Co. v. Polaroid Corp., 242 F.2d 116 (1st Cir. 1957), the issue of patentability depended wholly upon scrutiny of the prior patents. Nor is this to say that even the issue of obviousness could not in a proper case be decided by summary judgment. See Walker v. Gen. Motors Corp., 362 F.2d 56 (9th Cir. 1966). But we do say that where obviousness is the issue, *Graham* increased the hazards of this route to decision.[5]

In addition to the stringent requirements governing summary judgment generally and the specific inquiries exacted by *Graham,* the presumptive validity given to patent claims under 35 U.S.C. § 282 is also pertinent.[6] We conclude that the district court erred in granting summary judgment under section 103, noting, however, that nothing we have said here should be interpreted as indicative of the ultimate validity or invalidity of the Tichnor patent.

Judgment will be entered vacating the judgment of the District Court and remanding the case for further proceedings not inconsistent with this opinion.

5. For guidance in this circuit we should note that while *Converse* on its facts still seems to us a case peculiarly appropriate for summary judgment disposition, our rule of decision is subject to qualification. We held that summary judgment was available where the " 'prior art and the patent claims are, without expert aid, easily understandable by anyone of the most modest intelligence.' [citation omitted]." 242 F.2d at 120. As to a case which can be disposed of by analysis of patent claims, the principle still holds. But to the extent that scrutiny, comparison, and evaluation of the prior art beyond that revealed in patent claims are involved, there is need for greater caution in granting summary judgment. Whether such caution would

have dictated a different result in Glagovsky v. Bowcraft Trimming Co., 267 F.2d 479 (1st Cir.), cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959), where the precise device in issue had been used in closely affiliated arts and a close approximation had been used in the same art—we need not and cannot say.

6. Roberts argues that any presumption was negatived by the failure of the patent examiner to consider such examples of prior art as certain postcard packet exhibits presented to the district court. Such examples, however, do not seem to us to illustrate any significant enlargement of the concept embodied in the Haddan patent which the examiner considered.