**SHANKLIN CORPORATION**

v.

**SPRINGFIELD PHOTO MOUNT COMPANY.**

Civ. A. No. 72–410–C.

United States District Court,
D. Massachusetts.
Jan. 6, 1975.

Robert E. Meyer, Charles E. Pfund, Boston, Mass., for plaintiff.

Charles W. Bradley, Cooper, Dunham, Clark, Griffin & Moran, New York, N. Y., Robert J. Horn, Boston, Mass., for defendant.

## OPINION

CAFFREY, Chief Judge.

This is a civil action brought pursuant to 35 U.S.C.A. § 281 for alleged infringement of United States Patent No. 3,583,888. Jurisdiction is based on 28 U.S.C.A. § 1338(a) and 28 U.S.C.A. § 1400(b). Plaintiff Shanklin Corporation and defendant Springfield Photo Mount Company are Massachusetts corporations.

The patent in suit was issued on June 8, 1971, on the basis of an application filed on April 10, 1969 by Frank G. Shanklin, plaintiff's assignee. The allegedly infringing device is a machine called Weldotron Model 5872 Automatic L–Bar Package Forming System, which is manufactured by Weldotron Corporation of Piscataway, New Jersey. Although not a formal party to this case Weldotron is the real party in interest and it has entered into a letter of agreement dated February 29, 1972 under the terms of which it has agreed to defend

this suit "at its own expense," and to "pay all damages and costs, and be responsible for any other liability assessed by any judgment rendered in this suit."

In its answer, defendant Springfield admits that it has used the Weldotron machines in its commercial operation. The case presents the usual issues of validity and infringement raised by both plaintiff's complaint and by defendant's counterclaim for declaratory relief. Defendant also charges plaintiff with patent abuse. The issue of defendant's liability for any monetary damages was reserved until after a decision on the issues of validity and infringement.

After a four-day trial, I find and rule as follows:

1. *With Reference to the Issue of Validity*

The general subject matter of this litigation is the field of packaging machines. The machines involved are in a class of packaging machines generally known in the trade as L-type Sealers or, alternatively, as L–Sealers. More particularly, the machine in question is a packaging machine which uses clear plastic wrapping film positioned on a roll, which film is drawn from the supply roll as a continuous source of wrapping material and formed by the machine into a shape which will receive the article or articles to be wrapped in the plastic film. The articles to be packaged are fed into the film manually or by means of a mechanical pusher and the film is then sealed about or around the articles to make a completed package. The articles to be wrapped follow a straight line path to and through the machine. The roll of wrapping film is located out of the path of the moving articles and the film is drawn from the roll into the path of the article where it makes a 90° turn through the use of a forming head or inverting head. The wrapping film while on the roll, and thereafter, is in a folded condition, being folded in two along its center line before it makes the 90° turn through the head. As the folded film turns the corner in the head into the article path, it is opened in order to be able to receive the article passing along the article path. The article to be wrapped passes between the open sides of the film and against a previously made transverse seal to advance the film with the article into a sealing situation. At this point, a transverse seal is formed behind the article as well as a longitudinal seal alongside the article. The film is then severed transversely along the middle of the transverse seal being formed, in such a manner as to separate the completed package from the ribbon of film which has come off the roll, and in such a manner as to effectively separate the seal into two parts, one providing a back seal for the package which has just been wrapped and the other providing a forward seal for the next article in line to be wrapped on the machine.

At the trial a considerable quantity of prior art was introduced into evidence in support of defendant's contention that the Shanklin patent lacks invention over the prior art and in support of the claimed obviousness. Defendant's principal reliance is placed on the Siegel, et al patent No. 3,047,991 which is the patent for Weldotron's manual L–Sealer; Zelnick patent No. 3,429,100, the patent for Weldotron's automatic L–Sealer packaging machine; the Suzuki patent No. 3,494,096 for a folding head; and the Runo, et al patent No. 3,538,676 for intermittent motion in-line packaging machines. On the issue of obviousness defendant also relies on the disclosures involved in the exhibition and offering for sale, in 1965, of a packaging machine manufactured by Kleer-Vu Industries, which machine was the subject matter of the Dean's, et al patent No. 3,420,035.

One preliminary matter must be disposed of before the evidence of either obviousness or lack of inventiveness is analyzed and that matter is the plaintiff's objection to the Court considering the testimony given by William R. Runo, the inventor of patent No. 3,538,676.

When Mr. Runo was called as a witness by defendant on March 27, the plaintiff objected to the Court receiving his testimony on the grounds that defendant had failed to afford plaintiff the full 30-day notice prior to trial required by 35 U.S.C.A. § 282. The Court then took Mr. Runo's testimony as an offer of proof. At the close of all evidence on April 9 defendant moved to have the testimony of Mr. Runo received as evidence. The Court advised counsel that it would reserve judgment on the motion to accept Mr. Runo's testimony until after counsel had filed their requests for findings of fact, rulings of law, as well as memoranda of law. A review of the file indicates that although scheduled for trial on March 11, 1974, actual trial of this case did not begin until March 26. On February 11 defendant filed a motion to continue the trial for "about one month." On February 12 plaintiff filed a memorandum in opposition to the allowance of this continuance sought by defendant. On February 14 defendant's motion for a continuance was denied. On March 20 Mr. Runo agreed to become a witness. On the same day, counsel for defendant telephonically notified counsel for plaintiff that Mr. Runo had agreed to testify and also served written notice of that fact on counsel for plaintiff. Had not plaintiff's objection to the continuance prevailed, this case would have been scheduled for trial on Monday, April 15, or Tuesday, April 16, by which time plaintiff would have had 26 days' notice of the fact that Mr. Runo agreed to testify for the defendant, and, if the delayed trial had spread over the same number of calendar days as were used up by the trial which took place, from March 26 to April 9 (15 days), a trial which began on April 15 would not have concluded until April 29, in which event more than 30 days would have elapsed from March 20, the date on which notice of Mr. Runo's testimony was given.

Counsel for the defendant has represented to the Court, without challenge, that on March 25 at the calendar call, counsel for plaintiff made no objection on the ground of untimeliness to the announcement that defendant contemplated using Mr. Runo as a witness. Counsel further represented that in reliance on this lack of objection he did not advise the Court at the calendar call of the shortness of the notice given, and counsel for defendant further represented that had he been advised of any objection to the Runo testimony he would have used the opportunity available at the calendar call either to request that the Court rule on plaintiff's objection or to request a continuance of the trial until after the expiration of 30 days from March 20.

It also should be noted in reference to this objection that notice of the fact that defendant planned to rely on Mr. Runo's patent No. 3,538,676 was given to plaintiff in 1972, more than two years prior to the trial and that Runo's testimony was in line with the disclosures of his patent.

■ ■ It is settled law that the purpose of § 282 is to prevent parties from being surprised at the trial by evidence of a nature which they could not be presumed to know about or be prepared to meet. In considering whether or not to admit evidence of a witness if the required 30-day notice has not been given, the Court should consider (1) whether or not defendant has given any written notice prior to the trial, which was done herein; (2) whether plaintiff was actually surprised by the evidence. I find that the only surprise herein was that visited on defendant by counsel for plaintiff; (3) whether under the circumstances, plaintiff had adequate opportunity to present its case. I find that due to the 12-day recess between the defense resting and the rebuttal, the plaintiff had adequate opportunity to present its case and, in fact, presented substantially more evidence on rebuttal than it did in the presentation of its case; (4) whether the plaintiff has actually shown prejudice. I find no showing of prejudice herein; (5) whether plaintiff made a request for a continu-

ance at the time the evidence was elicited. No such request appears in the record herein; (6) whether there has been any intentional deception on the part of the defendant. I find no intentional deception or other misconduct on the part of the defendant or its counsel.

■ On the basis of the above, as well as the fact that during the pretrial discovery of this case from 1972 to the trial date, numerous references to the Runo patent were made in the course of depositions and interrogatories, I rule that the testimony of Mr. Runo is fully admissible despite the non-compliance with § 282. I further rule that exclusion of this relevant testimony would only serve the purpose of producing an adjudication of this controversy without the benefit of relevant and material evidence proffered by counsel. Accordingly, I accept the testimony of Mr. Runo as evidence in this case.

The patent in suit, being for an in-line packaging machine, describes a machine on which articles to be wrapped or packaged are placed. The articles then pass along or through the machine in a straight line. The packaging film is located on a roll outside the path along which the articles move. The film is drawn into the path of the article flow by the use of a forming head which redirects the direction in which the film moves 90°, and the head also opens the film to receive the articles which are placed on the machine to be packaged. The film used in plaintiff's machine is folded longitudinally along its center line before it arrives at the forming head. The forming head on the Shanklin machine turns the film inside out while redirecting its path. Thus, the outside surface of the folded film becomes the inside surface adjacent to the articles. For this reason, plaintiff sometimes denominates the head as an "inverting" head, although in his early entries in his notebook, dated May 27, 1968, he referred to it as a folding head. The head has also been characterized by witnesses called by plaintiff at the trial as a "forming mechanism" and a "forming structure."

It is important to note that plaintiff's device is based on the use of folded film and the passing of folded film, rather than flat film, through the forming head or device. This fact gives some relevance to a prior statement made by plaintiff to the patent office: "L–Sealers have used center folded film since they were first invented." This statement is contained in plaintiff's amended application, filed with the Patent Office in August of 1970.

The Shanklin patent file history is in evidence as defendant's Exhibit D. It reveals that the examiner originally rejected the application and all of its claims on the basis of Dean's patent No. 3,420,035. The Dean patent revealed an in-line continuous motion machine, the rights to which were acquired by Oliver Machinery Company which marketed the machine as the "Oliver-906." The Dean machine used a roll of flat film positioned outside the article path and a folding head which turned the film 90° into the article path while it was being folded and opened in order to receive the articles which were passing along the path. In response to this rejection an amended application was filed by Mr. Shanklin, making the point that the patent in suit was distinguishable from the device shown in Dean's in that it uses prefolded film which is turned inside out around the inverting head, whereas Dean's uses either a folding mechanism or a forming head. Thereafter, the examiner issued a second office action, designated "final," again rejecting all of the claims "for the reasons applied against them in the first office action."

Thereafter, plaintiff and his attorney had an interview with the examiner, in the course of which reconsideration of the "final" decision was requested and, eventually, the patent was allowed.

■ A review of the exhibits herein satisfies me that the instant patent is invalid, on the grounds of obviousness, within the meaning of 35 U.S.C.A. §

103, and also on the grounds that it has been anticipated by the prior art, within the meaning of 35 U.S.C.A. § 102. More particularly, I find with reference to Claim 1 of the instant patent, having to do with an apparatus for wrapping packages in a thermoplastic film, that it is obvious because of the disclosures contained in the commercial version of the Kleer-Vu machine (Tab 5-c to the "Prior Art Book," so called), (Defendant's Exh. C); because of the Davis drawing dated September 16, 1963 (Tab 6 to Defendant's Exhibit C); because of the Kleer-Vu drawing of January 27, 1965 (Tab 5-a to Defendant's Exhibit C); because of the Zelnick patent disclosures (Tab 2-a of Defendant's Exhibit C); and because of the German Ols patent disclosures (Tab 10 to Defendant's Exhibit C). I also rule that Claim 1 has been anticipated by the Runo patent (Tab 8 to Defendant's Exhibit C).

I find that Claims 2 through 7 of the Shanklin patent have been anticipated by the Runo patent (Tab 8 to Defendant's Exhibit C), and by the machine built on the basis of the Runo patent. In so finding, I accept as credible the testimony of the witness William R. Runo and the testimony of the witness James Davis. With reference to Mr. Davis, I specifically rule that his background as a United States Patent Office examiner, as an associate in a Washington, D. C. patent law firm, and his six years experience as a "trial judge" (commissioner) for the United States Court of Claims, qualifies him to express an opinion which is reliable and of assistance to the Court in resolving this highly technical matter. I also accept as credible the testimony of Seymour Zelnick, an experienced engineer who has been with the Weldotron Company for twenty years. I find as factually correct his opinion that "the combination that forms the patent in suit" was not novel in 1968 but, on the contrary, was "certainly obvious to quite a few people independently." I do not credit the testimony of rebuttal witness Frank A. James, which I find to be biased and unreliable.

### 2. With Reference to the Issue of Enforceability

■ Defendant contends that quite apart from the issues of obviousness and anticipation by the prior art, plaintiff may not succeed herein because of patent abuse. Defendant alleges, in substance, that plaintiff used its patented inverting head in connection with alleged "tie in sales" in such a way as to disqualify plaintiff from enforcing the patent if the patent were valid. Plaintiff has refused, and still refuses, to sell its patented Model A2 in-line automatic L–Sealer to anyone who does not have a standard L–Sealer supplied by plaintiff. That this policy is being followed by plaintiff is established in the record by answer to interrogatory No. 14 (Defendant's Ex. K), and by the testimony on pages 56 and 58 of Mr. Shanklin's deposition (Defendant's Ex. L). This testimony is also supported by plaintiff's brochure on the A2 L–Sealer (Plaintiff's Ex. 8). I find that because of these tie in sales, plaintiff would not have standing to enforce this patent if, in fact, it were valid.

■ Finally, defendant moves for attorneys' fees herein, primarily on the basis of defendant's claim that plaintiff intentionally filed the instant case knowing the patent to be invalid. I rule that defendant has not substantiated its burden of proof with regard to establishing plaintiff's prior awareness of or actual knowledge of the invalidity of its patent. Accordingly, I deny defendant's motion for attorneys' fees.

Judgment in accordance with this opinion.