**SHANKLIN CORPORATION,
Plaintiff-Appellant,**

v.

**SPRINGFIELD PHOTO MOUNT COMPANY, Defendant-Appellee.**

**No. 75–1061.**

United States Court of Appeals,
First Circuit.

Argued May 7, 1975.

Decided Aug. 20, 1975.

Charles E. Pfund, Boston, Mass., with whom Dike, Bronstein, Roberts, Cushman & Pfund and Robert E. Meyer, Boston, Mass., were on brief, for plaintiff-appellant.

Charles W. Bradley, New York City, with whom Robert J. Horn, Jr., Kenway & Jenney, Boston, Mass., and Cooper, Dunham, Clark, Griffin & Moran, New York City, were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff Shanklin Corporation sued Springfield Photo Mount Company for infringement of its patent, No. 3,583,888. The claimed infringing device, "Weldotron Model 5872 Automatic L Bar Package Forming System," is manufactured by Weldotron Corporation, which is the real party in interest defending in this action. The district court held that the patent was invalid and unenforceable, 387 F.Supp. 345 (D.Mass.1975), and Shanklin appeals.

Shanklin's patented apparatus is an "in-line" packaging machine, a term used when the articles to be wrapped follow a straight-line path to and through the machine. The wrapping material, a thermo plastic film, must be heat sealable so that its edges can be sealed around the articles being wrapped, and it may be heat-shrinkable so that the pack-

ages formed by the machine can be passed onto a conveyor and through a hot air tunnel to be shrunk into a tightwrap. A supply roll of the film is located out of the straight-line path of the articles, and the film is drawn from the roll into the articles' path, where it makes a 90° turn to follow the remainder of the path. The film must be in a folded condition (longitudinally along its center) while on the roll or before it turns the corner. By being tracked over a u-shaped rod called an "inverting head,"[1] the folded film is able to turn the corner into the article path and in the process effectively turned inside out so that its sides are separated and capable of receiving an article passing along the in-line article path through the inverting head. The article to be wrapped, passing between the film's open sides, presses against a previously made transverse seal across the film to advance the film into a sealing area. There an L-shaped bar ("L-sealer") seals the film longitudinally along the side of the article and transversely behind the article, thus forming a complete closure around the article. The film is severed at this transverse seal in such a way as to separate the completed package from the roll of film and also to provide the forward edge for the next article to be packaged. The articles can be passed either manually or automatically by a mechanical pusher.

The application for the Shanklin patent was filed on April 10, 1969. The Patent Office examiner initially rejected all claims, principally on the basis of Deans, et al. patent No. 3,420,035, which shows an in-line continuous-motion packaging machine. The examiner stated that it would be obvious to modify the Deans machine in accordance with prior art L-sealers (Hosso patent over sealing mechanism and Kral patent over feeding mechanism, which conveys articles to be packaged at right angle to the straight-line path of the film) to achieve the Shanklin claims. In particular, the examiner stated,

"The patent to Deans et al. discloses a packaging method and apparatus, the apparatus comprising film supply means 19 for feeding film transversely to the path of an article infeed conveyor and to an inverting head 22 having edges at approximately 45 degrees to each path (Fig. 1), which head folds the film about the articles so that longitudinal and transverse seams may be made to form packages, the transverse sealing means being used to draw film through the inverting head. While roll 20 is flat sheet, the apparatus of the patent to Deans et al. does fold the sheet to a V-shape as at 21, Fig. 1, prior to the inverting operation. The patent to Hosso shows that it is conventional, in apparatus for packaging articles in U-folded webs, to provide a generally U-shaped film spreader member 20, 24 having generally parallel upper and lower surfaces. In view of this teaching it would be an obvious modification, if such were desired, to bend member 22 of the patent to Deans et al. to a U-shape."

Shanklin responded that the Deans patent was deficient in its disclosure of the folding head—that it showed the desired result of folding the web without showing how to accomplish the result. Shanklin pointed out that in the Deans machine the web could not be folded into a v-shape prior to an inverting operation as stated by the examiner. In any event, according to Shanklin, it was unnecessary for Deans to describe the folding mechanism in detail because folding heads are old in the art and have been frequently used to wrap flat film around a mandrel, or forming head, to form a tube while articles to be packaged are passed through the mandrel into pouches as they are formed. Shanklin stated that, by contrast, the present invention involved pre-folded film turned inside out around an inverting head, thus per-

---

1. The film passes over the outside of the u-rod "inverting head," which is angled at 45°, and back through the inside, so that the fold stays at the curved portion of the u-rod.

mitting the film to pass through the sealing machine in a single plane simply, efficiently, and without elaborate film guides—a result which is particularly useful in L-sealers. Shanklin stated,

"Because of the structural requirements of the machine frame, L-sealers have used center folded film since they were first invented. Unfortunately, the center folded film has made it necessary to insert the product into the folds of film at right angles to the direction of travel of the film. The inverting head turns the prefolded web of film inside out thus permitting the product to be inserted in the same direction as the travel of the film through the sealing head while still using center folded film and thereby obtaining the advantages of the horizontal film webs. The product, in effect, is placed on the 'outside' of the webs of film which becomes the 'inside' upon passing over the inverting head. Prior to the invention of the inverting head, this was not possible."

The Patent Office examiner, in a "final" action, rejected the argument that the Deans folding head was insufficiently disclosed and again rejected all claims for the reasons stated originally. The inventor, F. Garrett Shanklin, subsequently had an interview with the examiner, and this was followed by an amendment submitting revised claims and containing remarks of what had transpired at the interview. The amendment states that at the interview Mr. Shanklin, in addition to showing three short motion pictures to demonstrate his machine, explained that it was a great improvement over prior art L-sealers, in which articles followed a right-angle path, because the Shanklin machine provided increased speed of operation and ease of adjustability for packaging articles of varying size. As for the Deans patent, Mr. Shanklin explained that when he first started to develop a straight-line L-sealer, he had tried a film feed and folding means similar to Deans's, using a roll of flat film mounted vertically and centered on a horizontally oriented and u-shaped folding head:

"This proved to be unsuitable for an L-type sealer where the film is advanced by the motion of a package pressing against a previously made seal in view of the fact that when the final transverse seal is made as to any given package all tension on the film is released and the film goes slack until the leading edge of the next succeeding package presses against the previously made seal. While the film in the experimental head would track as long as constant tension was maintained on the film, the film tended to slide down off of the folding head whenever the film was permitted to go slack. It will be noted that in Deans a constant tension on the film while the machine is in operation is provided by the constant movement of sealer bars 43 of end sealing mechanism 30 particularly in view of the fact that the sealing and severing step is not performed until 'just prior to the discharge thereof from the machine.' (Column 3, line 42). It was not until many months after this unsuccessful experiment that Mr. Shanklin conceived the present invention where prefolded film is advanced along a horizontal path to a film inverting head."

Thereafter, on June 18, 1971, a patent showing the Shanklin apparatus (but not the method) was allowed. The claims of the patent are recited in an appendix to this opinion.

The Shanklin machine was introduced in April 1969. In the fall of 1965 Weldotron introduced an automatic L-sealing packaging machine, based on Zelnick patent No. 3,429,100. This machine fed articles at right angles onto a straight film flow. Weldotron built its first in-line L-sealer in 1970 and in the spring of 1971 introduced its Model 5872 in-line L-Sealer, which is the machine at issue here and substantially the same as the Shanklin machine. Weldotron asserts

that the Shanklin patent is invalid but does not contest infringement otherwise.[2]

■ On November 25, 1969, about seven months after the filing for the Shanklin patent, and after Weldotron vice-president of engineering Seymour Zelnick had seen the Shanklin machine, Weldotron filed an application for a patent showing a large in-line L-sealer, with a u-shaped inverting mechanism almost identical to the Shanklin machine. A patent was later issued as Zelnick patent No. 3,619,970, which has been disclaimed by Weldotron since the trial of this case. That Weldotron's claims before the Patent Office were inconsistent with its present posture on the Shanklin patent is a factor to be considered; still, the prosecution of the Zelnick patent did not estop Weldotron from denying in this suit the validity of the Shanklin patent. *See Paramount Corp. v. Tri-Ergon Corp.,* 294 U.S. 464, 476–77, 55 S.Ct. 449, 79 L.Ed. 997 (1935).

After a trial the District Court for the District of Massachusetts, sitting without a jury, held that the Shanklin patent was invalid on the grounds of obviousness within the meaning of 35 U.S.C. § 103,[3] and also on the grounds of anticipation by prior art within the meaning of 35 U.S.C. § 102.[4] The court made several particular findings: claim one of the patent was obvious because of disclosures in a prior art in-line packaging machine (Kleer-Vu) and prior art L-sealer (Zelnick patent No. 3,429,100), and because of several contemporaneous drawings and inventions; claim one was anticipated by the Runo patent which shows an in-line packaging machine using prefolded film and a "forming die" that inverts the film; and claims two through seven were anticipated by the Runo patent and the modified machine built on the basis of that patent. Apart from the question of validity, the court held that the Shanklin patent was in any event unenforceable because Shanklin used its patent to make illegal tie-in sales. *See* 35 U.S.C. § 282. The court stated that Shanklin, as a matter of company policy, had refused to sell the patented Model A2 in-line automatic L-sealer (more accurately, a conversion kit consisting of the inverting head unit of the patented machine) to anyone who did not have a standard L-sealer supplied by Shanklin.

Preliminarily, we hold that the district court did not err in admitting and accepting as credible the testimony of three witnesses, William Runo, James Davis, and Seymour Zelnick.

---

**2.** In its post-trial memorandum, defendant withdrew its defense of noninfringement, so long as the Shanklin patent claims were not limited to the precise sealing mechanism of the patent. The claims have not been limited in such a manner.

**3.** Section 103 provides,

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

**4.** Section 102 provides in pertinent part,
"A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or . . .

(d) the invention was first patented or caused to be patented by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States, or

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the inventions thereof by the applicant for patent . . . ."

■ Shanklin contends that the district court erred in admitting the untimely testimony of Runo, one of the joint inventors of a prior art patent, to establish prior invention of a modified machine based on the patent. Contrary to the 30-day notice requirement of 35 U.S.C. § 282,[5] defendant did not notify Shanklin that Runo would testify until six days before the trial began, and even then the notice did not mention the modified Runo machine. (Notice of the Runo patent itself was timely.) However, section 282 provides that in the absence of adequate notice, proof may be made at trial "on such terms as the court requires." The district court asked for and received briefs from both sides and devoted several pages of its opinion to the matter. 387 F.Supp. at 347–49. It decided that there was no actual surprise or prejudice to Shanklin, and no intentional deception by defendant, pointing out that prior to trial Shanklin had some forewarning of the testimony as well as a 12-day recess between defense's resting and rebuttal. Shanklin, the court felt, had adequate opportunity to prepare and present its position. The court observed that Shanklin did not request a continuance after Runo had testified. We are of the opinion that in admitting the testimony about the prior art Runo machine, the court did not abuse its discretion under the statute.[6] See, e. g., Dale Electronics, Inc. v. R.C.L. Electronics, Inc., 488 F.2d 382, 388 n. 11 (1st Cir. 1973); Sutter Products Co. v.

Pettibone Mulliken Corp., 428 F.2d 639, 641–42 (7th Cir. 1970), and cases cited therein.

■ Shanklin also argues that because Runo was the inventor, his uncorroborated testimony could not be used to establish prior invention of the machine as built.[7] This contention is without merit. Runo was an independent witness without an interest in this suit; there was no requirement of corroboration. Moreover, when defendant tendered a drawing of the machine, Shanklin objected and the additional evidence was excluded on the ground that it was unnecessary.

■ Shanklin argues that the district court erred in accepting the testimony of James Davis, a patent lawyer with no experience in the packaging field, as the opinion of an expert. Davis provided a written analysis of the validity of the Shanklin claims when compared with prior and contemporaneous inventions introduced by defendant. The court ruled that Davis was qualified to assist the court in resolving highly technical matters, on the basis of his background as Patent Office examiner, associate in a patent law firm, and trial judge for the Court of Claims. Much of Davis' experience involved mechanical cases, and we think the district court did not exceed its discretion in receiving his opinions on technical matters. See, e. g., M. B. Skinner Co. v. Continental Industries, Inc., 346 F.2d 170, 173 (10th Cir. 1965). Nor can we say that the court

5. Section 282 provides in pertinent part,

"In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Claims, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice

proof of the said matters may not be made at the trial except on such terms as the court requires."

6. Shanklin cites in his behalf language from Turini v. Allens Mfg. Co., 198 F.2d 491 (1st Cir. 1952), cert. denied, 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1350 (1953). That decision, however, construed an earlier statute in the context of a witness' surprise testimony of his prior secret practice. The case seems to us not to control the situation here.

7. Runo, referring to a log book, testified that the modifications of his patented machine were made on July 31, 1967, and in tests the next day the machine operated successfully.

erred in finding his testimony credible merely because the witness mistakenly designated some documents as legally effective prior art. This inaccuracy was not of such a nature as to preclude giving general credit to the testimony. *See, e. g., Nyyssonen v. Bendix Corp.,* 342 F.2d 531, 536–37 (1st Cir. 1965). Similarly, we cannot say that the district court erred in accepting the testimony of Zelnick as credible simply because such testimony was self-serving and at variance with the Weldotron claims concerning Zelnick patent No. 3,619,970.

■ On the merits, we consider first the court's ruling that the Shanklin patent was anticipated by the Runo patent under 35 U.S.C. § 102. To anticipate under section 102, a prior art reference must disclose all the elements of the claimed invention or their equivalents functioning in essentially the same way. *See, e. g., International Glass Co. v. United States,* 408 F.2d 395, 405–06, 187 Ct.Cl. 376 (1969). *See also CBS v. Sylvania Electric Products, Inc.,* 415 F.2d 719, 725 (1st Cir. 1969), *cert. denied,* 396 U.S. 1061, 90 S.Ct. 755, 24 L.Ed.2d 755 (1970); *Colourpicture Publishers, Inc. v. Mike Roberts Color Pictures,* 394 F.2d 431 (1st Cir. 1968). In terms of the packaging industry's labels, the Runo patent shows a "form-fill-sealer," the Shanklin patent an "L-sealer." The parties have gone to considerable lengths to either equate or distinguish these types. Both are classified in the same category and subcategory at the Patent Office. Defendant asserts that L-sealers are a variety of form-fill sealer, the only difference being that L-sealers have an L-shaped seal bar that makes the side and cross seals of the package simultaneously after the article has been inserted, whereas other form-fill sealers make the side (or cross) seal first and then fill the three-sided pouch thus formed before making the final seal to complete the package. On the other hand, Shanklin contends that in form-fill sealers the film must be under continuous tension when drawn over the forming head to make a conforming

pouch, and the longitudinal seal must be formed to capture edges before tension is released—only then can the transverse seal be made without loss of tracking on the forming head, and thus the need exists to isolate the tension from the film in the seal area to avoid making a weak seal. Shanklin states that in L-sealers the tension in the feed process as well as in the seal process must be low.

■ Without attempting to pass judgment in such categorical terms, we find too many structural and operational differences for the Runo patent to be said to have anticipated the Shanklin patent within the meaning of section 102. Thus we think the court erred in its ruling of invalidity under section 102, and turn now to its ruling that claim one of the patent was obvious under section 103. (In our discussion of this point, we develop more fully some of the considerations relevant to our interpretation under section 102.)

■ To be valid under section 103, a patent must be nonobvious to one of ordinary skill in the art at the time it is made. Note 3 *supra.* As the Supreme Court has stated, resolution of this issue requires factual inquiry into the scope and content of prior art, the differences between the prior art and the claims in issue, and the level of ordinary skill in the particular art—as well as possible consideration of such secondary factors as commercial success, long felt but unsolved needs, and failure of others. *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Within this context the determination of nonobviousness is a question of fact, *see, e. g., Koppers Co. v. Foster Grant Co.,* 396 F.2d 370 (1st Cir. 1968), and this court may not set aside the district court's findings unless they are clearly erroneous, Fed.R.Civ.P. 52(a).

[11] In making its determinations, the district court must presume the patent to be valid and place the burden of establishing invalidity on the party asserting it. 35 U.S.C. § 282. Shanklin,

contending' that the district court did not accord the presumption of validity here, points out that the only prior art specified by the court in finding claim one to be obvious were two machines derived from prior art considered by the Patent Office—the commercial version of the Kleer-Vu machine, which is a successor to the Deans in-line machine, and the Zelnick disclosures, which were the state of the art in right-angle L-sealers at the time. The flaw in this contention is that it overlooks the significance of the Runo patent, which was not disclosed to the Patent Office examiner in the Shanklin application.

 While the district court did not explicitly [8] cite the Runo patent as a basis for invalidity except on the question of anticipation, the court's consideration of the Runo patent on the obviousness issue is implicit from its findings that all claims were anticipated by Runo. If a claimed invention is anticipated by prior art, it must also be obvious. *See, e. g., Popeil Bros. v. Schick Electric, Inc.,* 494 F.2d 162, 167 (7th Cir. 1974). The defense of obviousness is less strict than that of anticipation, which requires substantial identity of all elements between a single prior art reference and the claimed invention. Prior art which is insufficiently similar to support anticipation—such as where all elements or their equivalents are not found in one patent but may be found in different prior patents in the same art—may still render the claimed patent obvious in combining various elements. *See, e. g., Hutchinson Mfg. Co. v. Mayrath,* 192 F.2d 110 (10th Cir. 1951), *cert. denied,* 343 U.S. 914, 72 S.Ct. 647, 96 L.Ed. 1329 (1952). We think that is the situation here.

 Although not issued at the time of the claimed Shanklin invention in May 1968, the Runo patent is nevertheless prior art because of its earlier filing date of March 8, 1967, *see Hazeltine Research v. Brenner,* 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965), and the hypothetical person having "ordinary skill in the art" is imputed to have knowledge of it under section 103, *see David & David, Inc. v. Myerson,* 388 F.2d 292, 294 (2d Cir. 1968). The Runo patent, briefly, shows a vertical in-line packaging machine. The film, originally flat, is folded prior to entering a former die, or inverting head, and in the process turning 90° into the product line and opening to receive products when it becomes formed into a tubular bag. The Runo patent shows jaws drawing the film down over the folder and through the inverting head and forming die, but in the modified machine this is accomplished by the weight of the product supply forcing downward. The Runo patent makes the longitudinal seal intermittently, out of time with the transverse seal, and the modified machine makes the longitudinal seal for the next seal at the same time as the transverse seal for the previous pouch. Clamping jaws isolate and protect the fresh transverse seals from tension.

The Patent Office examiner for the Shanklin application, ignorant of the Runo patent, allowed the Shanklin patent after being shown how use of flat film through a folding head as in the Deans machine had failed, and how Mr. Shanklin later conceived the idea of using folded film and an inverting head. The entire record of this case is replete with statements that the crux of the Shanklin patent is the use of a u-bar to invert and redirect pre-folded film in an in-line packaging path.[9] Mr. Shanklin stated that the teaching of flat-film

---

8. However, the district court did "find as factually correct [Zelnick's] opinion that 'the combination that forms the patent in suit' was not novel in 1968, but, on the contrary, was 'certainly obvious to quite a few people independently.' " The court also accepted as credible defendant's expert Davis, who presented an analysis and expert opinion based in part on the Runo patent that all the Shanklin claims were obvious and most were anticipated. *See generally Edward Valves, Inc. v. Cameron Iron Works, Inc.,* 289 F.2d 355, 356 (5th Cir. 1961).

9. Frank James, a distributor for Shanklin, hedged on this point. The court found his testimony to be "biased and unreliable."

form-fill sealers had actually led him away from conceiving of the ultimately successful combination for use in an in-line L-sealer. Yet the Runo patent showed flat film being folded before reaching an inverting head that redirects the film into the article path,[10] and knowledge of this is deemed to exist at the time of the Shanklin application. We think this is highly pertinent evidence which may overcome the presumption of validity of the patent.[11] *See, e. g., The Triax Co. v. Hartman Metal Fabricators, Inc.,* 479 F.2d 951, 954 (2d Cir. 1973).

This is not to say that Runo's prior use of folded film and an inverting head establishes, by itself, that Shanklin's mode of using this combination for an in-line L-sealer would have been obvious to one of ordinary skill in the art. In the Shanklin machine relatively tension-free delivery of folded film to the head is necessary for tracking, article enclosure and advancement, and a tensionless seal. The Runo machine, vertically oriented to package heavy amounts of loose material in pouches formed around a head, requires tension over the forming head—or at least so it seems from the evidence in the record. *See* note 10 *supra.* These dissimilarities indicate the need for further inquiry into whether one having ordinary skill in the art could be expected to evolve the Shanklin machine from the Runo patent and other prior art references.

■ The court relied in part on evidence offered to show that others of ordinary skill in the art also approached the matter of in-line packaging machines much as Shanklin had done about the same time.[12] We think such evidence was admissible and probative.[13] Though presented to support the patent's validity or that the court failed to give due deference to the patent's presumption of validity.

10. We do not think the Runo folding structure 34 and inverting forming head 50 must be viewed as an integral structure. Mr. Runo testified that the location of the folding member next to the forming member was only a matter of convenience in terms of one-piece construction of parts. On the other hand, there is no device to isolate the tension caused by the film dragging over the folder, and so tension exists over the head and the film must be pulled. In that sense the Runo machine is distinct from the version of the Shanklin patent which employs flat film that is folded on route to the inverting head—a power unwind isolates the tension and thus allows the film to be "directed," not "drawn," into the inverting head. Defendant calls this a distinction without a difference and points to the Runo machine's film reservoir, which reduces back tension. But the Runo counterweight does not eliminate tension over the head and thus does not disclose the essential property of the tracking device which made it useful.

11. After Zelnick's testimony and before Runo's testimony, the district court told counsel, "I have serious doubt whether there is any invention, right now," and urged defendant to expedite its case. On the basis of this remark, Shanklin asserts that the court improperly shifted the burden of proof to Shanklin at a time when the burden had not been overcome. While remarks of this character understandably tend to an impression of prejudgment, we do not take them in isolation. Having reviewed the record, we are not persuaded that the court inadequately considered the evidence

12. The court relied on three conceptions which do not constitute prior art. The German OLS application shows a large in-line start-stop machine, with folded film on a roll outside the article path. At the article path the film turns 90° through a large, u-shaped inverting hood, which opens and turns the film inside out. Articles are advanced to the seal area by rollers.

John Davies, product development manager at the Oliver Company, which purchased the Deans patent, produced at trial two notebook pages containing a 1963 drawing of his proposed automatic in-line L-sealer, which was to use folded paper over a spreader folder.

The Kleer-Vu drawing of January 25, 1965 showing a product path, folded film roll, and right angle-folder, corroborated the testimony of Deans and co-inventor Pace that they had originally contemplated using folded rather than flat film in the machine which had derived from the Deans patent. The inventors thought folded film would make easier the right-angle fold to feed material for packaging, but they found that folded film was more expensive and decided to use flat film in a u-shaped tube instead.

13. Shanklin asserts that the court relied on this evidence as prior art. But we can find nothing in the record to support this contention except, perhaps, the fact that the court included this evidence as well as prior art in a

not prior art, 35 U.S.C. § 102(g), these contemporaneous suggestions and concept drawings provide cumulative indicia as to what constituted ordinary skill in the art and thus alleviate somewhat the problem of evaluation by hindsight. *See, e. g., International Glass Co., supra,* 408 F.2d at 405; *Felburn v. New York Central RR,* 350 F.2d 416, 424–26 (6th Cir. 1965); *Reeves Bros. v. United States Laminating Corp.,* 282 F.Supp. 118, 140 (E.D.N.Y.1968), *aff'd,* 417 F.2d 869, 872 (2d Cir. 1969). From these, as part of the record as a whole, the court could reasonably find that others had been able to fashion tracking devices similar to Shanklin's including ones with pre-folded film for use in in-line L-sealers (unlike the Runo patent).

We do not think Shanklin derives much support from the record on such secondary factors as its patent's commercial success. There is evidence of a significant demand for the in-line L-sealer in New England after Shanklin introduced the first one, and Weldotron followed suit. However, Weldotron's argument that it had no incentive to compete with its own right-angle L-sealers until the Shanklin in-line version appeared is plausible. Weldotron's sales of automatic L-sealers have shifted to a point where future sales are expected to split evenly between in-line and right-angle machines; Shanklin has essentially been selling only its patented machine. There is nothing of strong weight in the record as to the relative general attractiveness of the two versions in terms of sales, speed, efficiency, or layout suitability.

There is no showing of "long-felt but unresolved need." Mr. Shanklin testified that he was asked to build an L-sealer, and he preferred to build an in-line model. When he first failed, he held the project in abeyance for a year before returning to it and conceiving of the patented mechanism right away.

No failures are established in the record except that of Mr. Shanklin himself. Shanklin alleges that Weldotron failed, but it is not altogether clear that Weldotron's horizontal centerfolder, which was offered for sale as a film-folding machine in 1965 with little success, reflected an aborted attempt to produce an in-line L-sealer. The fact that it was once tested with an L-sealer and produced high drag establishes little. In this regard we note that evidence was introduced and corroborated that Weldotron project engineer Budzyn suggested in a memorandum of July 15, 1965, that the centerfolder could be opened up in a way to permit in-line insertion of packages during the folding of film. His suggestion was of an in-line automatic L-sealer with a roll of folded film turned inside out through an inverting "tray." Shanklin argues that this memorandum shows failure, because the idea was abandoned as impractical or unworkable. But the memo notation does not indicate this construction—rather, it says, "This arrangement may be favorable for a high rate of automatic feed."

On this record we cannot say that the district court was clearly erroneous in concluding that claim one of the patent was obvious under section 103.

Although the district court explicitly stated that the patent was invalid for obviousness, it did not make specific findings that claims two through seven were obvious. The court did find these claims to be anticipated by the Runo patent and machine. For the reasons stated above as to the necessary bearing of the Runo patent on the finding that claim one was obvious, we think there is implicit in the court's rulings a finding of obviousness on claims two through seven, and we cannot say that the court overlooked these claims. *See Nashua Corp. v. RCA,* 431 F.2d 220, 225 n. 6 (1st Cir. 1970). Moreover, given the findings

list of the bases for the finding of obviousness. But even in this list the court referred to Weldotron's "Prior Art Book" as "so-called." And earlier in its decision the court accurately referred to prior art being relied on by defend-

ant. Moreover, at trial Shanklin's counsel specifically called attention to what in Weldotron's Prior Art Book was prior art and what was not, and the court carefully noted the distinctions made.

of obviousness on claim one, we think the court could reach no other conclusion on the other claims on this record.[14] It is quite clear from the history of Shanklin's application to the Patent Office that the examiner finally allowed the patent on the basis of Shanklin's claim one, based on the folded film and inverting head mechanism. *See Graham v. John Deere Co., supra,* 383 U.S. at 32, 86 S.Ct. 684. Claims two, four, and six, insofar as they differ from claim one, *see* appendix, are identical or substantially equivalent to elements in the Runo patent and machine, and clearly obvious. Claim seven is the in-line equivalent of the prior art right-angle automatic L-sealer conveyor mechanism, by which the pusher arm advances the articles against the end seal in a start-stop motion. Claim five, which specifies the path of package flow and a support means through the film inverting head, has no equivalent in the vertically oriented Runo machine as to its latter aspect, but we agree with defendant's witness Davis, credited by the court, that the support means would be obvious to use in a horizontally oriented machine. Only claim three, providing for the inverting head to be mounted so as to be adjustable for packages of varying width, gives us reason to pause. Prior art in-line machines, such as Deans's, could make width adjustments only with considerable difficulty and remounting. However, as Mr. Shanklin attested to, the L-sealer is versatile and easily adjustable. We think the claimed adjustment is not a significant feature in the patent, given that claim one is found to be obvious, and we think it would be a simple expedient. We do not pass on whether the adjusting mechanism of the Moore patent, which shows an interleaving tissue-stacking machine, belongs to an art sufficiently analogous to bear on this question.

Since there was evidence to support the finding that all claims of the patent were invalid for obviousness, we do not rule on the district court's holding that the Shanklin patent is unenforceable because of patent abuse in the form of illegal tie-in practices.

*Affirmed.*

## APPENDIX

### Shanklin Patent Claims

1. In an apparatus for wrapping packages in a thermoplastic film

having a film supply means wherein thermoplastic film is supplied as an elongated length folded back upon itself along a longitudinal axis to form a top and a bottom web portion overlying one another in close juxtaposition one to the other and is directed into the apparatus along a horizontal path with the folded edge on one side and the free edges on the other, and

a film sealing means having at least an intermittently operated transverse sealing means for sealing said folded film transversely between said folded edge and said free edges

a film inverting head located between said film supply means and said film sealing means in the path of package flow through said apparatus in such a manner that the fold line in said folded film may be passed through the center line of the inverting head, and that the film is redirected and turned inside out in passing over and through said inverting head, said inverting head providing an opening into which a

---

**14.** In *Colourpicture Publishers v. Mike Roberts Color Productions,* 394 F.2d 431 (1st Cir. 1968), the district court had granted summary judgment without making the requisite inquiry as to obviousness, and was reversed. Here, by contrast, there was a full trial and extensive briefing of the court. In view of the general holdings and entire record, we cannot assume that the court overlooked the claims, and we do not remand.

APPENDIX—Continued

Shanklin Patent Claims—Continued

package may be inserted between the connected webs of said film

said inverting head comprising a pair of spaced arms operably associated at one end, said arms intersecting said path of package flow with one arm extending above and the other extending below said path of package flow and being directed at an angle both to the path of package flow and to the path of film travel from said supply means to said head with the operably associated end of said head substantially aligned with the path of the folded edge of said film

whereby after a first transverse seal has been made in said length of film, the passage of a package along said path of package flow through said inverting head and across said transverse sealing means draws enough film from said film supply means over and through said inverting head to surround said package.

2. [Statements identical to claim 1 omitted] the path of said film travel to said head being substantially at right angles to the path of said package flow, and

the said head being set at an angle of about 45° to both said path of package flow and said path of film travel

3. [Same as claim 2] the film inverting head being mounted to move in a direction normal to said path of package flow whereby adjustment for packages of varying width may be accomplished merely by moving said film inverting head

4. [Same as claim 1] said inverting head comprising a pair of spaced arms operably associated at one end and oriented substantially parallel one above the other

5. [Same as claim 1] the path of package flow including a package support means which extends through said film inverting head

6. [Same as claim 5] wherein automatic means are provided for feeding packages one by one onto and across said support means through said inverting head across said transverse sealing means

7. [Same as claim 1] a film sealing means having an intermittently operated sealing means for sealing said folded film both transversely between said folded edge and said free edges and longitudinally along said free edges