**Application of Theodore ESKILD and George E. Houghton.**

Patent Appeal No. 7856.

United States Court of Customs and Patent Appeals.

Jan. 4, 1968.

Robert Henderson, New York City (Francis J. Pisarra, New York City, Robert I. Dennison, Washington, D. C., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of all of the claims in appellants' application [1] entitled "Fabric Based Packing-Ring Blank."

The invention relates to a blank suitable for forming a packing ring such as is used in machinery to provide a seal between a rod or shaft and a machine housing opening through which the rod or shaft extends. The packing rings have a generally U-shaped cross-section [2] which forms two upstanding lips, the inner of which seals against the rod or shaft and the outer of which seals against the housing.

Appellants' ring blank is formed by first winding a single relatively long strip of impregnant-filled fabric to form a multi-layer cylindical ring. One edge of the ring is circumferentially folded, bent or rolled inwardly until it comes into radial alignment with the opposite edge, thus forming a ring of U-shaped cross-section. This is the blank which appellants claim.[3]

Claim 1 is illustrative:

1. A circumferentially continuous, U-shaped packing-ring blank having the recess in the U facing axially of the blank and comprising:

a circumferentially spiral winding of impregnant-filled fabric, strip material;

said winding including plural intimately associated turns of said strip

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 297,554, filed July 25, 1963.

2. The term "U-shaped" is used in appellants' specification and herein to encompass "V-shaped."

3. The blank is formed into a finished packing ring by subjecting it to heat and pressure in a mold having the desired final shape, but this processing step forms no part of the claimed invention.

material constituting plies of the latter, each of the turns being continuous relatively to an adjacent turn and

each of said plies, as viewed in radial section of the blank, extending across the bottom of the U and into opposite flanges thereof.

Seven of the eight claims in the application were rejected under 35 U.S.C. § 102 on the Poltorak patent 2,533,742. The remaining claim, which recites the ends of the strip material being substantially in radial alignment to equalize the number of plies of material in the blank, was rejected under 35 U.S.C. § 103 on the same reference.

The Poltorak patent also relates to ring packings for "a rod, shaft, plunger, cylinder or other moving part." Such packings "are conventionally of generally U or V cross-section to include an upstanding lip or lips for sealing engagement with the moving part." The portions of the Poltorak patent relied on by the examiner are those in which the patentee discusses the art prior to his invention. The patent discloses that:

In the manufacture of the conventional packings, a strip of the cloth carrying the rubber compound as an impregnant, or partial impregnant, is formed into a multi-ply ring by wrapping a plurality, say, 2 or 3 convolutions of the strip on a mandrel, or the like. * * * The rings made in any of the ways described above are preferably pre-folded to an approximately V cross-section and are then placed in molds of the finished shape of the rings and subjected to heat and pressure. * * *

From another portion of the patent, it would appear that the V is first formed with its opening radially outward, and then is rotated to bring the opening into an axial position:

As will be appreciated, in inserting the preform in the mold, it is necessary to distort it sufficiently to rotate the V from a substantially horizontal to a vertical position. This same condition is present in the manufacture of the conventional rings * * *.[4]

The examiner felt that "The axially facing, 'conventional' V cross-section preformed ring, described by Poltorak, is the claimed packing ring blank." In other words, the examiner held that the conventional preform described by Poltorak in the condition immediately before the mold is closed is a blank, and is indistinguishable from appellants' claimed invention. The Board of Appeals agreed, as do we.

Appellants argue that the Poltorak article cannot be called a "blank" after distortion because it is not a self-supporting structure, as the term "blank" connotes, but must rely on the walls of the mold to hold it in its "distorted" or axial position. However, Poltorak does not state that he contemplates a limp blank, nor does he teach the necessity of support to maintain the blank in an axial position. On the contrary, since the patentee and appellants disclose the same materials and the same construction of their ring, it would appear that the blanks formed by both would be equally self-supporting. Even if the Poltorak blank is not self-supporting, however, it is clear that the Poltorak blank after placement in the mold is the identical structure defined by appellants' claims. The rejection of the claims under 35 U.S.C. § 102 is therefore proper.

As to the rejection of one claim under 35 U.S.C. § 103, the examiner held that providing radially aligned ends of the wound strip of Poltorak would be obvious because "It is common practice in the seal art to make packing rings of uniform thickness and strength and of constant inner and outer diameter." The examiner cited no art to illustrate this "common practice," but since appellants have raised no challenge to this statement, we accept it as being factual,

---

4. In view of the patent drawings and the previously quoted reference to "upstanding lips," it seems clear that Poltorak uses "horizontal" to mean a radial opening of the mouth of the V, and "vertical" to mean an axial opening.

and agree with the examiner's holding of obviousness.

We have considered appellants' arguments and citations concerning the requirements of a reference for anticipatory purposes, but we are not persuaded of any error on the part of the Patent Office. Likewise, we are unmoved by appellants' argument that failure of an examiner to cite a particular reference in his first Office action demands a conclusion that the reference is not pertinent.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.

KIRKPATRICK, J., concurs in the result.

SMITH, Judge (concurring).

The majority opinion embraces a basis for its decision which seems to me to be too general. When read as broadly as it is written, the majority opinion seems to accept fully the proposition that a prior art patent can be relied upon to support a rejection for not only what it teaches or suggests to the art, but also for all that it enunciates concerning the prior state of the art. It is of common knowledge that statements in issued patents concerning the prior state of the art are in the nature of self-serving declarations. As such, these statements should only be relied upon subject to the reservations with which courts have treated self-serving declarations.

The probative value to be accorded to interpretations of the prior art contained in a reference patent depends first of all on the veracity and competency of the applicant and his attorney. Either or both may be mistaken about what the prior art, *in fact*, includes. Also, such interpretations must be evaluated for their factual *worth* by a standard of what the statements mean to one of ordinary skill in the art. We deal here with determining *factual bases* upon which legal conclusions are predicated. The test by which such statements of the prior art must be evaluated is to determine what the *disclosure* of the prior art would reasonably teach or suggest to one of ordinary skill in the art. See, e. g., In re Siebentritt, 372 F.2d 566, 54 CCPA 1083 (1967). To this extent, *facts* may be determined from the reference patent.

The establishment of the *fact* of what the prior art reveals must necessarily result from an inquiry made from the objective standpoint of the "reasonable man" of patent law, i. e., one of ordinary skill in the art. While no guarantee of the trustworthiness of the offered "evidence" is required, reasonable care must be exhibited to avoid inadvertently attributing more knowledge to the "prior art" than is, in reality, contained there.

The language of this court in In re Trbojevich, 361 F.2d 1013, 53 CCPA 1241 (1966), while arising from a somewhat different factual context, is believed to be appropriate:

When appellant's argument is considered in the light of the issue here, its thrust is directed to the *weight* which should be accorded the teachings of British. Section 103 is not specific as to the *weight* to be accorded to a particular reference, but requires rather that we consider the totality of the teachings of the prior art to determine what would have been obvious to one of ordinary skill in the art at the time of making the invention in issue.

In that case, this court considered that one of ordinary skill in the art would recognize certain challenged statements in a British patent as being valid teachings at the time the invention was made. We noted that the statements were *credible information* to be evaluated for their *factual worth* by one of ordinary skill in the art.

Here I agree with the result reached by the majority but only on the basis that when the statements in *Poltorak* are accepted and evaluated by what seems to me to be the proper standard, they are sufficient to have shifted to the appellants the burden of establishing facts to the contrary. I do not find that appellants have met this burden. They ap-

parently accepted, without challenge, that statement in *Poltorak* concerning the prior art which provides a strong base for the majority's conclusion.

Thus, I would sharply limit the decision here to the failure of appellants' proofs and not open the door to a general acceptance of the statements of the prior art as found in prior patents. Such statements should be considered only on the very limited and cautious basis here suggested.