**SYSTEMATIC TOOL & MACHINE COMPANY et al., Appellees,**

v.

**WALTER KIDDE & COMPANY, INC., Appellant.**

**No. 76–1660.**

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1977.

Decided March 25, 1977.

---

Gordon D. Coplein, Darby & Darby, New York City, Richard M. Rosenbleeth, William H. Roberts, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Jacob C. Kellem, Connolly, Bove & Lodge, Wilmington, Del., for appellant.

Alan H. Bernstein, Caesar, Rivise, Bernstein & Cohen, Philadelphia, Pa., for appellees.

Before ROSENN and HUNTER, Circuit Judges, and SNYDER,[*] District Judge.

SNYDER, District Judge:

Systematic Tool and Machine Co., Systematic Products, Inc., and Dominic D'Ambro, licensees, with Clayton E. Giangiulio, owner of the patent, filed this action for patent infringement. The decision of the district court found valid and infringed Patent No. 3,369,582 (hereinafter "the '582 patent") issued February 20, 1968, for a hand-operated tomato-slicing device. Appeal was taken to this court under 28 U.S.C. § 1292(a)(4) giving us jurisdiction over "Judgments in civil actions for patent infringement which are final except for accounting." Since we find the subject matter of the patent and the prior art relating to this device is obvious, we reverse under 35 U.S.C. § 103.[1]

## I. THE PATENT IN SUIT

■ The patent in suit relates to a commercially successful[2] and efficient tomato slicer. As set forth in Claim 1, the device is characterized by the following features:

1. A pusher to hold the tomato and move it with reference to an array of blades.

2. The blade array lying at an angle less than 40° with respect to the pusher path of movement.

3. The angle of separation between the pusher leading arm and trailing arm being greater than 90°.

4. The angle between the leading arm and the cutting edge of the blades being less than 90°.

5. The trailing arm of the pusher making a small acute angle with reference to the cutting edge of the blades.

The plaintiffs assert that the tough skin and mushy interior of a tomato present a unique problem in slicing since a direct perpendicular contact of the tomato and blade edge tends to bruise or mangle the tomato. Plaintiffs' claimed invention solved this problem by the various angles between the leading and trailing arms which hold the tomato between the pusher and the angle of the cutting edges of the blades to the pusher. The '582 patent device pushes the tomato in a straight line through the rack of thin blades at an angle less than 40° with respect to the pusher path of movement. See Figure I.

---

* Daniel J. Snyder, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. 35 U.S.C. § 103 reads as follows: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

2. See Appellees' Brief, p. 7. Capable of slicing a tomato per second, plaintiffs' invention, it was agreed, was an improvement over slicing with a hand-held knife or slicing with a meat-slicer which scattered individual slices, released juice, and required cleanup procedures. Commercial success without invention, however, will not make patentability. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc.*, 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *A & P Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); *U. S. Expansion Bolt Company v. Jordan Industries, Inc.*, 488 F.2d 566 (3rd Cir. 1973).

The original claims filed did not relate the angle of the leading and trailing arms to the physical structure or recite any particular angles for them. The Examiner originally rejected the claims for two reasons: (1) for indefiniteness in not stating relationships between the angles and physical structures, and (2) for obviousness over a combination of prior art slicers with similar structures but having somewhat different angles relating to the blades and pusher. The claims were amended to distinguish the prior art (as underlined by the patentee to make it apparent how the claim differed from the prior art) as follows:

". . . an [relatively small acute] angle less than forty (40) degrees with respect to said pusher path of movement, the angle of separation between said pusher leading arm and trailing arm being greater than 90°, the angle between said leading arm and the cutting edge of said blades being less than 90° with the trailing arm of said pusher making a small acute angle with respect to said cutting edge, . . . whereby said pusher assembly [achieving] achieves a smooth shearing action [by said blades through] with a tomato urged against and through said blades to secure a plurality of thin tomato slices, essentially undamaged, with said tomato holding pocket slots allowing said blades to pass through the tomato." [Additions to the claim are underlined; deletions are in brackets.]

## II.  THE ACCUSED DEVICES

There are two accused devices know as the TK–I and the TK–II machines. The TK–I, not sold since 1968, is a virtual copy of the plaintiffs' machine and was stipulated to be an infringement of the patent in suit, if the court finds the patent in suit valid. The TK–II, not sold since 1972, is a somewhat different looking method of doing that which the plaintiffs' device (called the "Tomato Tamer") achieves.[3] See Figure II.

## III.  THE TRIAL COURT'S TREATMENT

The district court filed a preliminary opinion and order holding the '582 patent valid and infringed but allowed 30 days to file exceptions. Exceptions were filed and by its second opinion, the district court denied the exceptions, affirming and readopting its earlier findings of fact and conclusions of law. A third order later denied injunctive relief in view of the defendant's cessation of infringing activities in 1972.[4]

---

3. Redco, Inc. (a non-party) was the sole manufacturer of the accused devices and sold them to defendant Kidde which, in turn, resold through distributors as well as users like Burger King Corporation, an operator of hamburger restaurants. This action was commenced in the Northern District of Illinois against Kidde and several of its customers, including Burger King. It was transferred to the Eastern District of Pennsylvania, with Kidde as the only active defendant. Suit was stayed as to all other defendants pending disposition of the litigation before this court.

4. While apparently counsel originally conceived that accounting would proceed before appeal to this Court (Trial Transcript, p. 12) the three orders dispose of all proceedings in the district court except for an accounting and collectively constitute the requisite judgment for our jurisdiction under 28 U.S.C. § 1292(a)(4). Cf., *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3rd Cir. 1975); *W. L. Gore & Associates, Inc. v. Carlisle Corp.*, 529 F.2d 614 (3rd Cir. 1976); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3rd Cir. 1976).

FIGURE I

FIGURE II

Plaintiffs' principal witness, Clayton Giangiulio, inventor and former delicatessen operator, pointed out that prior to his invention, tomatoes had been sliced with a hand-held knife, a slow process at best, or with an expensive commercial meat slicer which scattered individual slices, released juice, and required time consuming clean-up procedures. He demonstrated that a tomato could be sliced by pushing it with his hand but not as safely and efficiently as with the patented device. He admitted that while the basic elements of a slicer consisting of blades, pushers, bases and relative movement were well known, innovation was claimed in the unique arrangement of otherwise general elements which existed in different relationships in the prior art—"the slicing of tomatoes at a rate ten times greater than the prior art as well as providing straighter slices held together in the form of a tomato." (Appellees' Brief, p. 14.)

The defendant elicited through Ronald Karr, an extensively qualified mechanical engineer, a designer, and professor of mechanical design, that the '582 patent was a routine development of old elements in view of prior art patents for straight line slicing devices. He stated on cross examination:

"Q. Now, you have testified with respect to six patents on direct examination?

A. Yes, sir.

Q. Is it your testimony that given these patents and put in a room you could come up with the invention in suit?

A. I would need in that room several tools and materials to produce the invention. And I would have to qualify that a little bit, but yes; I could. And there are about half a dozen others that could do that. Since I don't know every engineer in the country, there might be a thousand people that could do that." (p. 342a).[5]

The plaintiff chose not to contradict this testimony but to argue that the six prior art patents relied upon by the defendant did not show a pusher containing slots for the reception of blades, where the blade array lies at an angle of less than 40° with respect to the pusher path movement to achieve thin tomato slices in a single pass of the pusher through the blades.

The district court analyzed the six patents from a functional viewpoint saying for example, that the French patent to Birambeau for a tomato slicer relied on a sawing action which did not foreshadow a mechanical, single pass slicer such as the subject matter of the patent in suit. The court held that the Bever patent for a bun slicer could not pass completely through the tomato and "[n]o reasonable adaptation of the machine will perform such a function. Hence, we conclude that the Bever patent neither suggests nor discloses the subject matter of the patent in suit." The court continued this type of analysis through the other prior patents and concluded:

"We have determined from the patent material submitted by the defendant and discussed above, that the ordinary level of skill in the art of food slicing is that possessed by an individual performing that task. . . .

We have heard the evidence of defendant's expert engineering witness. We understand his testimony to mean that slicers are interesting developments of known technology and that, while a particular slicer may be an extremely efficient, and well-designed piece of machinery, there is no invention in putting a slicer together. However, in light of the prior art, and of our determination of the ordinary level of skill in the art, we disagree with his opinion as to the obviousness of the '582 patent. . . . We find that the subject matter of the '582 patent is not obvious to an individual possessing the average level of skill in the art, in light of the prior art existing at the time the invention was developed and the application was filed; the inventor of the '582 patent, Clayton Giangiulio, did

5. Page numbers followed by "a" refer to pages in the Appendix to the Briefs.

not know of the existence of any device which suggested to him the machine he devised. Rather, the '582 patent was the product of his own independent and original development, and hence we disagree with the defendant's contention of obviousness from the prior art."

In coming to this conclusion the court rejected Karr's expert opinion that it is routine handbook procedure first to determine the physical nature of the object to be sliced, and that merely to recognize the physical properties of the common tomato [6] does not reach the level of invention. Further, the court held that the basic elements of fruit and vegetable slicers—blades, pushers, bases and means for relative movement—were well known in the prior art but that innovation existed here in the synergistic result achieved by the unique arrangement of these basic elements which existed separately or in different relationships in the prior art. The lower court concluded it was the plaintiffs' solution to the peculiar problem of slicing tomatoes (pressure build-up during slicing) that embodied innovative and unique developmental work which resulted in the invention.[7]

On infringement, the court relied on the doctrine of equivalents, *i. e.,* the essence of the invention used is identical even though the superficial form is different. *Cf., Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) ("if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.") Since the TK–I admittedly infringed upon some of the claims of the '582 patent and the TK–II used the same element of the '582 patent (a shallow-entry-angle pusher in relation to the blades) for the same purpose and in the same manner, it, too, infringed.

## IV. OBVIOUSNESS

Very recently in *Sakraida v. AG Pro, Inc.,* 425 U.S. 273, 279–80, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784 (1976) the court stated:

"It has long been clear that the Constitution requires that there be some 'invention' to be entitled to patent protection. *Dann v. Johnston,* 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976). As we explained in *Hotchkiss v. Greenwood,* 11 How. 248, 267, 13 L.Ed. 683, 691 (1851): '[U]nless more ingenuity and skill . . were required . . . than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skillful mechanic, not that of the inventor.' This standard was enacted in 1952 by Congress in 35 U.S.C. § 103 'as a codification of judicial precedents . . . with congressional directions that inquiries into the obviousness of the subject matter

---

**6.** The following appears in Chapter "*1876 Centennial*":

"Tomatoes have always been favorites here," wrote John Lewis, a transplanted Englishman. "They generally require a person to be educated to them. . . . They . . . are eaten in every possible way, mostly however cut up alone." From *We Americans,* A Volume in the Story of Man Library, published by The National Geographic Society, p. 228 (1975).

**7.** The lower court stated:

"Our conclusion is based on the following factors: (1) the central factor in the development of a food slicer is the identification of the unique problems associated with the preparation of a particular category of fruits or vegetables; (2) while diverse elements of food slicers are well-known in the art, it is the synergistic result of arranging these elements in a specific manner that is significant in the issuance of a patent for the invention; (3) it would be unusual for an engineer to have either the need for such a device, or the method of accomplishing the desired result; and (4) the activity of an engineer in those circumstances would be cumulative toward a successful embodiment of the concept, and not independent of the actual creative work involved in isolating the problems before arriving at a solution."

sought to be patented are a prerequisite to patentability.' *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 566 (1966). Section 103 provides:

'A patent may not be obtained though the invention is not identically disclosed or described, as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.'

The ultimate test of patent validity is one of law, *A & P Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 155, 71 S.Ct. 127, 131, 95 L.Ed. 162, 168 (1950), but resolution of the obviousness issue necessarily entails several basic factual inquiries. *Graham v. John Deere Co., supra*, 383 U.S. at 17, 86 S.Ct. at 693.

'Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.' *Ibid.*"

■ These three inquiries—scope and content of the prior art, differences between prior art and the claims at issue, and the level of ordinary skill in the art—are findings of fact to be made by the district court; having resolved these crucial factual questions, the court then draws its legal conclusion as to obviousness. *E. g., Philips Elec. & P. Ind. Corp. v. Thermal & Elec. Inc.*, 450 F.2d 1164, 1173–74 (3d Cir. 1971). In the case before us, appellants claim that one of these factual questions—level of ordinary skill in the art—was erroneously determined and that this resulted in an improper conclusion of law as to obviousness.

■ The search in this branch of inquiry under 35 U.S.C. § 103 is for a hypothetical person [8] having ordinary skill in the art to which said subject matter pertains, i. e., the problem solver and not the user of the solution. *Gass v. Montgomery Ward & Co.*, 387 F.2d 129, 132 (7th Cir. 1967), *quoted in Erie Technological Products, Inc. v. Die Craft Metal Products, Inc.*, 461 F.2d 5, 8 n.5 (7th Cir. 1972) ("The level of ordinary skill in the field appears to be that of mechanically inclined men with long experience in design of auto accessories"); *Howe v. General Motors Corporation*, 401 F.2d 73, 78 (7th Cir. 1968), *cert. denied* 394 U.S. 919, 89 S.Ct. 1192, 22 L.Ed.2d 452 ("The level of ordinary skill in the field of designing automobile bodies, including hinges, was that of engineers of substantial training, and specialized skill.").

In the case at bar, the district court engaged in a detailed analysis of the prior art as illustrated in prior patents, admitting that the activity of an engineer, if he were aware of the problems associated with slicing tomatoes, would culminate in the patented concept. But it then stated:

"(3) it would be unusual for an engineer to have either the need for such a device,

**8.** In *Tokyo Shibaura Electric Co., Ltd., et al. v. Zenith Radio Corp.*, 548 F.2d 88 (3rd Cir. 1977) at p. 94, fn. 18, we said:

"[This theoretical person of] ordinary skill in the art is 'charged with knowledge of all that the prior art disclosed at the time of his alleged invention, irrespective of whether persons of ordinary skill in the field, or he himself, or anyone else, actually possessed such all-encompassing familiarity with prior disclosures.' *Cool-Fin Electronics Corp. v. International Electronic Research Corp.*, 491 F.2d 660, 662 n.7 (9th Cir. 1974), *quoting Walker v. General Motors Corp.*, 362 F.2d 56, 60 n.3 (9th Cir. 1966). *Accord, Layne-New York Co. v. Allied Asphalt Co.*, 501 F.2d 405, 406 (3rd Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975)."

or the method of accomplishing the desired result; and (4) the activity of an engineer in those circumstances would be cumulative toward a successful embodiment of the concept, and not independent of the actual creative work involved in isolating the problems before arriving at a solution."

The court therefore looked to the knowledge of persons who perform the task of tomato slicing to determine skill in the pertinent art. By focusing on the user rather than the problem solver, the district court erred.

An interesting and pertinent application of principle can be gleaned from the court's treatment of the skill in the pertinent art for beehive fasteners in *In re Application of Grout*, 377 F.2d 1019, 1021–22, 54 CCPA 1559 (1967):

"It is appellant's position that since the combination of elements claimed is to be used by beekeepers that it is to this group we must turn to ascertain what would have been obvious to them. After discussing the disclosures of the prior art, appellant states the position in his brief that:

The preceding discussion calls attention to a variety of facts, circumstances and reasons which *repel* the inference that it would have been obvious in 1961 for a man of ordinary skill in the beekeeping art to turn to the window shade roller art or Andersen's polymer film stretching device for ways and means of improving beehive components. Such facts, circumstances and reasons show the difference in problems and objectives in the several arts differ from one another and how the deformative measures inhering in the arts of the secondary references would be completely unsuitable for application to bees' wax foundation webs which are commonly used in the invention. . .

"Considering all the papers of record, we are not convinced that the 'person having ordinary skill in the art to which said subject matter pertains,' section 103, is exemplified by a beekeeper. Appellant's invention relates to novel fastening means used in beehives. It is alleged that a problem existed in the support of honeycomb foundations which appellant solved. While this *problem* would be encountered by a *beekeeper*, we think the problem naturally calls for the talents of one skilled in the art of *fasteners*. Under section 103 we must look to the person of ordinary skill in the art to which the invention pertains, not those who may use the invention." [Emphasis supplied.]

Similarly, in *Universal Athletic Sales Co. v. American Gym, Rec. & Ath. Eq. Corp.*, 546 F.2d 530, at 537 (3d Cir. 1976), this Court looked to the problem solver in the business when it held that the art pertinent to a weightlifting apparatus is the design of body-training devices. In other words, the hypothetical person skilled in the pertinent art is the mechanically skilled individual familiar with the design of devices in the industry. *Erie Technological Products, Inc. v. Die Craft Metal Products, Inc., supra; Howe v. General Motors Corp., supra.* Here, then, the pertinent art is the design of food slicing devices. We hold, therefore, that the district court's finding as to the level of ordinary skill in the art was clearly erroneous.

Having resolved this critical factual issue, this court is in a position to draw the ultimate conclusion of law with respect to obviousness. As stated in *Deller's Walker on Patents*, § 109 at 153–54 (2d ed. 1964):

"The issue of law as to whether an invention was obvious to one having ordinary skill in the art is one which a court of appeals is in as good a position to determine as the district court; the latter's conclusion on this issue, not being on a question of fact, is not clothed with a presumption of correctness, and instead requires that the court of appeals make its own independent determination thereon. Rule 52(a) does not require the court

of appeals either to accept findings unsupported by the evidence or to require the court of appeals to respect conclusions which do not rest properly on the facts of the case. . . . [But] such finding[s] . . . of fact . . . unless clearly erroneous will not be set aside by the court of appeals." (Footnotes omitted)

■ Had the district court applied the proper standard of skill—that possessed by the mechanic familiar with the design of food slicing devices—it would have had only the uncontradicted expert testimony of Mr. Karr to determine the question of "obviousness" with respect to such persons.[9] Mr. Karr testified that it would be routine procedure for a mechanic first to determine the physical properties of the object to be sliced, see *supra* at 346, and that mechanics familiar with other patents in the food slicing industry would apply known mechanical principles to come up with the tomato slicer in question, see *supra* at 347. He supported his conclusion with testimony about six prior patents which would suggest to the mechanic the principles applied in the Tomato Tamer. Specifically, the Bever patent (a bun slicer) had its blade fixed at the same shallow angle to the path of the pusher, but it would not pass the blade clearly through the tomato. The Curtis patent (a fruit slicer) also showed an angle of less than 90° ("an angle of at least 70°") and contained the equivalent of the pusher leading arm of the Tomato Tamer (p. 329a).

Mr. Karr was asked by the Court: "You are saying in effect . . . that given a mechanic and designer of ordi-

nary skill and given the problem of cutting a tomato, that the prior art which certainly has encompassed pushers with pockets to hold the fruit or the object, blades to push them through and means of so angling the pusher so that it goes through the blades, that this would be an obvious thing for anybody presented with the problem who had the skills of an ordinary mechanic or designer?"

His response was, "Yes, your Honor." (p. 337a)

In light of this uncontradicted testimony about the skill of mechanics familiar with the design of food slicers, we need not remand to the district court for further findings of fact. Although the synergistic combination of known elements is one factor to consider in determining obviousness, we cannot agree that the district court's findings reveal any more of a synergistic effect than was found in the device to release water on a barn floor from a storage tank in *Sakraida, supra*. See also *Anderson's-Black Rock v. Pavement Salvage Co.*, 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1960). As a matter of law, plaintiffs' slicer was "obvious."

Despite the commercial success of the product, there was no "invention" to warrant patentability, and the judgment of the district court will be reversed.

ROSENN, Circuit Judge, dissenting.

What splits this panel is not the pertinent art of designing food slicers but the cutting edge of the appropriate principle to be ap-

9. The dissenting opinion expresses concern that Mr. Karr did not represent a person having ordinary skill in the pertinent art—the design of food slicing machines. That concern would be relevant to the issue before us only if Mr. Karr had testified that the device in question would *not* have been obvious to anyone "who had the skills of an ordinary mechanic or designer." Then we would have been forced to remand the case so that the lower court could consider whether a person with the *additional*

*skills* of one who designs food slicers might have viewed the device as obvious.

As it is, however, Mr. Karr testified that the device would have been obvious to *anyone* with ordinary mechanical or design skills—skills we must presume food slicing designers to possess. *A fortiori*, the device must have been obvious to the latter group, too. There is no need, then, to remand the case so that the impact of food slicing designers' *peculiar* skills can be considered.

plied in correcting a critical error in the district court's analysis. The majority believes that remand to the district court for further findings is superfluous and that this court can draw "the ultimate conclusion of law with respect to obviousness." I, on the other hand, believe that important and essential findings of fact are yet to be made and the case must be remanded to the district court before we can draw any conclusion as to whether or not the patent is obvious.

The question that confronts us is whether the ingenuity displayed in plaintiffs' tomato slicing device rises to the level of patentable invention. The major controversy in this case is whether plaintiffs' unique combination of elements known in the prior art was obvious under 35 U.S.C. § 103 (1970). As we recently stated in *Tokyo Shibaura Electric Co., Ltd. v. Zenith Radio Corp.*, 548 F.2d 88, at 93 (3d Cir. 1977), "[t]he ultimate determination of patent validity is a conclusion of law reviewable for error, but the resolution of the obviousness issue depends on several basic factual inquiries reviewable under the 'clearly erroneous' standard of Fed.R.Civ.P. 52(a)."

The three crucial factual inquiries underlying the determination of obviousness are the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Philips Electronic & Pharmaceutical Industries, Inc. v. Thermal Electronics Industries, Inc.*, 450 F.2d 1164, 1173–74 (3d Cir. 1971).

The majority has accurately pinpointed the problem with the district court's decision as its resolution of "the level of ordinary skill in the pertinent art." In finding that this level of skill was that possessed by a hypothetical person skilled in the slicing of food, the district court took an impermissible shortcut and ended up in the wrong tomato patch.

The district court evidently failed to realize that a determination of the level of ordinary skill in the pertinent art is necessarily a two-step process: first, the pertinent art must be identified; secondly, the level of ordinary skill in that art must be ascertained. An attempt to resolve the issue without breaking it down into its two component steps can only lead to confusion.

I agree with the majority that the district court erred in identifying the pertinent art as food slicing. As the majority holds, the decisions of our sister circuits and our own recent decision in *Universal Athletic Sales Co. v. American Gym, Recreation & Athletic Equip. Corp.*, 546 F.2d 530 (3d Cir. 1976), would indicate that the pertinent art here is not the slicing of food but rather the *design of food slicing devices*. Having identified the pertinent art, however, we must still ascertain the level of ordinary skill in that art. It is at this point that my views diverge from those of the majority.

The majority simply assumes that the level of ordinary skill in the art of designing food-slicing devices is that of an ordinary mechanic. The majority then proceeds to place great weight on Mr. Karr's testimony that the patented device "would be an obvious thing for anybody presented with the problem who had the skills of an ordinary mechanic or designer". (Majority op. at 350.) My difficulty with Mr. Karr's testimony is twofold: first, although he may be an accomplished engineer of sorts, Mr. Karr's expertise seems to lie primarily in the design of aircraft propulsion systems and industrial machinery. Referring specifically to his experience in the designing of food-cutting devices, Mr. Karr testified:

Q: Did you ever have anything to do with designing any machines that could be compatible with use in the food industry?

A: I never had occasion to design a food or bread cutting machine. No, Your Honor.

His only experience with slicers was in 1961 and these were film splicers, not food slic-

ers. In short, little weight can be attached to the testimony of Karr, a mechanical engineer, who had no familiarity with the pertinent art as we have identified it.[1] Secondly, Karr's testimony assumed a fact yet to be proved—that the level of ordinary skill in the art of designing food slicing devices is the skill possessed by an ordinary mechanic. I can find no evidence in the record to support that assumption, which the majority treats as an established fact. Neither Karr nor anyone else testified to the level of ordinary skill in the pertinent art.

In telescoping what should be a two-step inquiry—the identification of the pertinent art and the determination of the level of ordinary skill in that art—the majority suggests that ascertaining the former automatically fixes the latter. Applying this novel theory to the instant case, the majority holds that "we must *presume* food slicing designers to possess [the skill of an ordinary mechanic]." Majority Opinion at 350 n.9 (emphasis supplied). That the majority cites no authority for making such a presumption as to the level of ordinary skill is not surprising since *John Deere, supra*, requires that the level of skill be ascertained by a factual inquiry, not somehow "presumed" out of thin air.

The majority also fails to recognize that the level of ordinary skill is defined by those who practice the art, not by the art itself. *See, e. g., CBS v. Sylvania Electric Products, Inc.*, 415 F.2d 719 (1st Cir. 1969), *cert. denied*, 396 U.S. 1061, 90 S.Ct. 755, 24 L.Ed.2d 755 (1970). It certainly does not appear self-evident to me that because the pertinent art in the instant case is the design of food-slicing equipment the level of ordinary skill must be that of an ordinary mechanic. The two questions are quite distinct. The level of skill in the pertinent art is a pure question of fact, *Philips Electronic, supra*, not the result of a legal equation.

The level of ordinary skill in the art of designing food-slicing devices can be resolved only by evidence as to the skills of those who practiced that art at the time of making the invention. *Shanklin Corp. v. Springfield Photo Mount Co.*, 521 F.2d 609 (1st Cir. 1975); *Application of Trbojevich*, 361 F.2d 1013, 1014, 53 CCPA 1241 (1966). The level of ordinary skill may have been high or low, either capable or incapable of producing the patented device. A host of questions may have to be answered, such as: At the time of this claimed invention, who were the people actively engaged in the field? What was their educational background? How much and what sort of experience had they had in the field? How often had they met with success in tackling similar problems? *See, e. g., Jacobson Bros., Inc. v. United States*, 512 F.2d 1065 (Ct.Cl.1975); *CBS v. Sylvania Electric, supra*. It is even appropriate to assess the approaches to the sort of problem here involved taken by other practitioners of the art; evidence of the scope and depth of their approaches might be highly probative of the level of skill which they possessed. *See, e. g., Shanklin Corp. v. Springfield Photo Mount Co., supra*. The level of ordinary skill can be ascertained only by answering questions such as these; no shortcut is defensible. Such an analysis depends on evidence; it requires findings of fact which only the district court can make.

Since the district court failed to answer any such questions, either explicitly or implicitly, we have no choice but to remand. Even if it were permissible for us to determine the level of ordinary skill in the pertinent art, we would be unable to do so on the basis of the present record; the record is completely silent in this area. The testi-

---

1. The majority makes no attempt to justify its reliance on Karr's testimony; it simply ignores Karr's near total ignorance of the pertinent art.

mony of Karr, on which the majority relies exclusively, is entitled to little weight since Karr, a mechanical engineer, did not provide—and could not provide—any evidence whatsoever as to the level of ordinary skill in the art of designing food-slicing equipment. He candidly conceded that he had no familiarity with the art. Karr's testimony would have value only if we could determine that the assumptions on which he relied were correct. The record before us, however, provides no basis upon which we can make such determination, one way or the other. The case therefore should be remanded to the district court so that it can properly fill the gaps in the record and make appropriate findings of fact.

Accordingly, I respectfully dissent.